UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAL ROSEBERRY, W.K.,
and J.T.,

       Plaintiffs,

v.

STUDIO 6 DELK ROAD, LLC;
LEXICON HOSPITALITY, LLC;
and LEXICON HOSPITALITY
INVESTMENTS, LLC,

       Defendants.

CIVIL ACTION FILE

NO. 1:25-cv-01062-LMM

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**INTRODUCTION**

Defendants' motion and arguments are copy-and-paste duplicates of those filed by their counsel in all TVPRA cases they are defending.[1] The playbook is straightforward: ignore all well-pled allegations, make wildly inaccurate assertions about the facts alleged, and hope the Court believes their fictional recitation is true, all while citing to out of date case law that has been rejected and abandoned as incorrect. Such automatic filings that disregard the allegations in each complaint are

---

[1] *See, e.g.,* Ex. 1.

made in bad-faith and only intend to burden Plaintiffs with unnecessary work, waste the Court's time, and delay this case.[2]

Defendants' employees acted as **lookouts for Plaintiffs' traffickers** to keep **these specific Plaintiffs** confined and sold for sex at the Motel 6 undetected by police. Every court in the country has agreed that an employee who, while acting in the course and scope of their employment, knowingly rents a room to a trafficker for the purpose of selling a child for sex satisfies the elements of a claim under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1591, *et seq*. ("TVPRA").[3]

---

[2] This is precisely the type of frivolous motion—misrepresenting facts to the Court—Plaintiffs' counsel referred to in Dkt. No. [12-1].

[3] Plaintiffs' attorneys reviewed 220 civil sex trafficking opinions under § 1595—believed to be *all* of the relevant opinions in the country—and found no case holding that this form of actual knowledge and involvement in trafficking did not satisfy the elements of a § 1595(a) claim. *See, e.g., A.G. v. Northbrook Indus., Inc.*, No. 1:20-cv-5231, 2022 WL 1644921 (N.D. Ga. May 24, 2022); *G.W. v. Northbrook Indus., Inc.,* No. 1:20-cv-5232, 2024 WL 3166083 (N.D. Ga. June 14, 2024); *Doe #1 v. Red Roof Inns, Inc*., 21 F.4th 714 (11th Cir. 2021); *I.R. v. I Shri Khodiyar, LLC*, No. 1:22-cv-844, 2024 WL 1928755 (N.D. Ga. Mar. 18, 2024); *Does 1-4 v. Red Roof Inns, Inc.*, 688 F. Supp. 3d 1247 (N.D. Ga. 2023); *Doe (R.A.) v. Best W. Int'l*, No. 2:23-cv-3459, 2024 WL 3850958 (S.D. Ohio Aug. 16, 2024); *Doe (S.A.S.) v. ESA P Portfolio LLC*, No. 3:23-cv-6038, 2024 WL 3276417 (W.D. Wash. July 2, 2024); *A.M. v. Wyndham Hotels & Resorts, Inc.*, No. 2:22-cv-3797, 2024 WL 1347301 (S.D. Ohio Mar. 29, 2024); *S. Y. v. Best W. Int'l, Inc*., No. 2:20-cv-616, 2021 WL 2315073 (M.D. Fla. June 7, 2021). Even the unpublished, non-binding opinion in *K.H. v. Riti* held that the motel's actual knowledge of a person's trafficking was sufficient. 2024 WL 505063, at *3 (11th Cir. Feb. 9, 2024). Here, there is such actual knowledge of each Plaintiff.

Defendants' motion disingenuously asserts: "Plaintiffs' FAC is devoid of any factual allegations that Defendants actively assisted, encouraged, or abetted the traffickers or that any Motel 6 Delk Road staff ever actually observed the trafficking Plaintiffs allege to have been victims of." Dkt. No. [19] at 4.

Plaintiffs' FAC says this:

- Defendants' employees destroyed evidence and acted as lookouts for Michal's trafficker to allow *Michal's trafficking* at the Motel 6. Dkt. No. [15] ¶ 25. Employees knew Michal's trafficker well, fist-bumping and hugging him when he arrived with his victims, including Michal.[4] *Id.* ¶ 26. Defendants' employees were so friendly with Michal's trafficker that when her trafficker hit Michal in the face in front of the front desk, the employee simply told the trafficker, "Not in the lobby." *Id.* ¶ 27.

- Defendants' employees—front desk and housekeeping—were paid by J.T.'s traffickers to destroy evidence and hide *J.T.'s sex trafficking* at the Motel 6. *Id.* ¶¶ 40, 41, 46.

- Defendants' employees destroyed evidence and acted as lookouts for W.K.'s trafficker to allow *W.K.'s trafficking* at the Motel 6. Defendants *loaned* W.K.'s trafficker rooms at the motel *for free*, so the trafficker could sell the minor W.K. for sex and *then* pay Defendants for the room. *Id.* ¶¶ 49–52.

These facts alone state a claim for relief under the Trafficking Victims Protection Reauthorization Act ("TVPRA") and Georgia's public nuisance law. Every TVPRA case in the country supports denial of Defendants' motion given just the above facts.

---

[4] This is practically identical to the allegations in *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017), which the Eleventh Circuit has made clear are the "kinds of allegations [that] would establish a hotel operator's participation in a venture with a sex trafficker." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).

## I.    STATEMENT OF FACTS

Plaintiffs J.T., W.K., and Michal Roseberry were victims of sex trafficking at the Motel 6 located at 2360 Delk Road in Marietta, Georgia ("Motel 6"). Dkt. No. [15] ¶ 1. Defendants Studio 6 Delk Road, LLC, Lexicon Hospitality, LLC, and Lexicon Hospitality Investments, LLC (collectively, "Defendants") owned, operated, managed, and profited from the operation of the motel. *Id.* ¶ 11.

J.T. was trafficked for sex at the Motel 6 twice—first as a child in 2012 for two continuous months, and again from 2015 to 2016, by a different trafficker. *Id.* ¶¶ 33–35. J.T. was sold for sex to around five buyers each day. *Id.* ¶ 44. J.T. was visibly controlled. She kept her head down and avoided eye contact. *Id.* ¶ 36. Once, she was beaten for looking at a man at the Motel 6. *Id.* ¶ 36. In fact, J.T. was frequently beaten by her trafficker in and around in the motel. *Id.* ¶ 36. And on June 25, 2016, J.T. was raped at the Motel 6. *Id.* ¶ 42.

Housekeepers saw J.T.'s rooms filled with used condoms, lubricants, needles, and girls in skimpy clothes. *Id.* ¶ 45. They brought extra towels for J.T. to clean up between buyers and accepted money to keep quiet. *Id.* ¶ 40. And they knowingly removed and destroyed evidence of J.T.'s trafficking, so that any investigation of J.T.'s trafficker would be stymied by the destruction of evidence. *Id.* ¶ 46. Front desk employees also took money to allow the trafficking. *Id.* ¶ 40–41.

W.K. was trafficked at the Motel 6 between 2013 and 2014, beginning when

4

she was only 15 years old. *Id.* ¶ 48. She was forced to see 10 or more sex buyers daily. *Id.* ¶ 56. Housekeepers entered her room and removed trash cans filled with condoms, saw her in skimpy clothing, and observed cocaine left out in plain view. *Id.* ¶ 49. They destroyed this evidence rather than report it, making it harder to investigate W.K.'s trafficker. *Id.* ¶ 50. Her trafficker was allowed to stay without paying in advance—selling W.K. for sex first and using the proceeds to pay Defendants later. *Id.* ¶ 52. And Defendants' employees acted as lookouts for W.K.'s trafficker and permitted W.K.'s trafficking to continue. *Id.* ¶ 51. W.K. was visibly young, injured, exhausted, and avoided eye contact. *Id.* ¶ 55. She loitered on the property wearing very little clothing, closely watched by her trafficker, and was seen soliciting male patrons, yet no one intervened. *Id.* ¶¶ 53–54.

Michal Roseberry was trafficked at the motel from late 2015 through March 2016. *Id.* ¶ 20. She was sold to up to 15 men a day and confined with as many as eight other girls, all visibly abused with bruises, split lips, and hair torn from their scalps. *Id.* ¶¶ 21, 24. They were not allowed to speak, use phones, or look anyone in the eye. *Id.* ¶ 22. Housekeepers cleaned the rooms while the girls remained inside—dressed in revealing clothing and surrounded by condoms and drug paraphernalia—and discarded the evidence. *Id.* ¶¶ 25, 30. Motel employees acted as lookouts. *Id.* ¶ 25. Michal's trafficker fist-bumped and hugged the front desk employee on arrival, speaking to him like an old friend. *Id.* ¶ 26.

Once, in full view of that same employee, Michal's trafficker punched her in the face in the lobby, hard enough to draw blood. *Id.* ¶ 27. The employee looked at her, then calmly told the trafficker, "Not in the lobby." *Id.* ¶ 27. No one called for help. *Id.* ¶ 27. Instead, Michal was led back to the room to be beaten and sold again. *Id.* ¶ 27. On another occasion, Michal tried to escape—running from the room at the Motel 6 in just her underwear—but her trafficker chased her down in the parking lot and dragged her back inside the room, where she was beaten again. *Id.* ¶ 28.

These abuses occurred as a direct result of Defendants' policies. Defendants maintained a policy of permitting and facilitating sex trafficking at the Motel 6. *Id.* ¶¶ 32, 47, 57. Defendants enacted this policy by, among other things, agreeing to house Plaintiffs' traffickers and their trafficking venture, their associates and victims. *Id.* Defendants also had a policy of loaning rooms to traffickers, permitting them to sell victims first and pay later. *Id.* ¶ 52. In addition, Defendants enforced a policy of not contacting law enforcement, including in the case of J.T., W.K. and Michal Roseberry. *Id.* ¶ 58. This practice was reinforced by employees who accepted money from traffickers instead of reporting the abuse, creating a safe and unchecked environment for sex trafficking to flourish. *Id.* ¶ 73.

The harms extended far beyond the Plaintiffs. Motel 6 became a known hub for sex trafficking and criminal activity, drawing hundreds of sex buyers and endangering the surrounding community. *Id.* ¶¶ 43, 76–78, 90–93. The Marietta chief of

police described the property as "very problematic," citing constant calls for prostitution and drug-related activity. *Id.* ¶ 94. Some Motel 6 employees even bought sex from trafficking victims themselves. *Id.* ¶ 64.

## II.    LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir.

2006)). However, this principle does not apply to legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

## III.    ARGUMENT

Courts consistently uphold claims where hotel staff directly assist traffickers.[5] Defendants' employees actively assisted each Plaintiff's trafficker in trafficking each specific Plaintiff at the Motel 6. Oddly, Defendants rely on many outdated arguments and case law that have been rejected by the Eleventh Circuit or abandoned as incorrect. Though the analysis is repetitive,[6] Defendants' liability for each element is set forth below.

### A.    Defendants argue the wrong knowledge standard throughout.

Defendants' entire motion is predicated on applying the wrong legal standard to a claim under § 1595 of the TVPRA. *See* Dkt. No. [19] (citing the legal standard for § 1591 eleven times). This is wrong and was specifically held to be wrong by the Eleventh Circuit four years ago in *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724

---

[5] *See supra* note 3.

[6] In short, every reviewed opinion in the country agrees that the egregious fact of knowing employee involvement, while in the course and scope of their employment, satisfies the elements of § 1595. Which is unsurprising, given that such participation satisfies the higher perpetrator claim standard of actual knowledge. The recent disputes regarding the TVPRA have to do with what additional activity is covered under the "should have known" standard applicable to other civil beneficiaries.

(11th Cir. 2021), still the only binding precedent in this circuit. As this Court has noted:

> [T]he Eleventh Circuit expressly rejected that interpretation and instead found that § 1591—the portion of the TVPRA providing for criminal liability—"clearly states that its definition of 'participation in a venture' ... applies only to the phrase as used in [§] 1591 of the statute" and "makes no sense" in the context of the civil provisions of § 1595(a).

*A.J. v. Pac. Capital Funding, LLC*, 1:22-cv-2752, 2023 WL 6193013, at *2 (N.D. Ga. Apr. 14, 2023) (May, C.J.). Because Defendants' entire motion regarding the TVPRA is based on an outdated argument that was specifically rejected by the Eleventh Circuit, Defendants' motion should likewise be denied.

### B.    Defendants violated the TVPRA as to each Plaintiff.

### i.    Defendants knowingly benefited from the hotel.

Defendants received money from Plaintiffs' traffickers to rent the rooms in which Plaintiffs were trafficked.[7] Every court in the country to analyze this element "ha[s] found that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp 3d 1228, 1234 (N.D. Ga. 2022) (collecting cases).

Defendants arguments citing to *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 170 (S.D.N.Y. 2019) and *United States v. Afyare*, 632 F. App'x

---

[7] Dkt. No. [15] ¶¶ 18(a), 97–98, 129.

9

272, 286 (6th Cir. 2016) are woefully out of date and hearken back to arguments made by litigants in the first filed cases in the Northern District of Georgia in 2019 and 2020, when there was no in-circuit body of law to rely on. Those two cases have never been followed in the Eleventh Circuit and don't even involve hotels that rent rooms to sex traffickers. Since the Eleventh Circuit's *Doe #1 v. Red Roof Inns, Inc.* opinion, no court in this circuit has even had reason to address this fringe argument. That is likely because of the uniform agreement since that time in hundreds of hotel sex trafficking cases that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *J.G.*, 619 F. Supp. 3d at 1234 (collecting cases). No court in this circuit has ever agreed with Defendant that the benefit prong requires "some benefit with knowledge of, and on account of, the trafficker's alleged exploitation of Plaintiffs," Dkt. No. [19] at 9.[8]

---

[8] The decisions addressing the *Geiss* argument all pre-date *Doe #1*: *Doe v. LQ Mgmt. LLC*, No. 0:20-62541, 2021 WL 8775730, at *5 (S.D. Fla. Feb. 1, 2021) ("As this Court reasoned in *Doe v. Rickey Patel, LLC,* however, stating a civil claim under the TVPRA, does not require pleading facts that demonstrate actual knowledge of the sex trafficking venture."); *Doe v. Rickey Patel, LLC*, 0:20-60683, 2020 WL 6121939, at *6 (S.D. Fla. Sept. 30, 2020); ("Alleging that Defendants knowingly received rent for hotel room Defendants knew or should have known was being used in a sex-trafficking venture is sufficient to meet the "knowingly benefit" standard for a claim under § 1595 of the TVPRA."); *Bridges v. Poe*, 487 F. Supp. 3d 1250, 1262 (N.D. Ala. 2020) (not deciding issue because allegations meet a knowing standard regardless). *Geiss* was also discussed in *Doe #1 v. Crowley Mar. Corp.*,

Thus, Plaintiffs have sufficiently alleged that Defendants knowingly benefitted under the TVPRA.

### ii. Defendants participated in a venture under the TVPRA.

Defendants did more than accidentally rent rooms to men it should have known were trafficking the three Plaintiffs. Defendants and their employees knowingly assisted and facilitated Plaintiffs' trafficking.[9]

"Participation in a venture" means "taking part in a common undertaking or enterprise involving risk and potential profit." *Doe #1*, 21 F.4th at 724. That is all. This element does not require the defendant to be in a "venture" with the traffickers.[10] For this reason, *Doe #1*'s definition of "participation in a venture" is broad and encompasses more than just knowing or intentional criminal conduct, such as acting as a lookout for traffickers. Yet even if "participation in a venture" meant something other than what *Doe #1* held it meant, as some cases have erroneously said (*e.g.*, *Riti*,

---

3:23-cv-383, 2024 WL 1346947, at *14 (M.D. Fla. Mar. 29, 2024), which was a perpetrator case that did not address the beneficiary standard at all.

[9] This, of course, is also a criminal violation of § 1591(a)(1) and (2) because the hotel is knowingly harboring under (a)(1) and knowingly benefitting under (a)(2).

[10] While *Doe #1* talks at times about connecting the defendant and the traffickers, the Eleventh Circuit did so only because the plaintiffs had pled that the defendants (hotel franchisors) were in a "sex trafficking venture" with the plaintiffs' traffickers. In doing so, *Doe #1* was doing nothing more than applying the general definition of "participation in a venture" to the specific facts of that case. The Eleventh Circuit was quite clear in defining participation in a venture as above.

2024 WL 505063),[11] the evidence here meets that higher standard as well. No opinion in the country has ever held otherwise, and Plaintiffs have exceeded the requirement of participation in a venture. *See* cases cited *supra* note 35.

Defendants' employees actively assisted Plaintiffs' traffickers. They acted as lookouts, they told Michal's trafficker where it was ok to beat her and where it wasn't, they were paid by J.T.'s trafficker to conceal J.T.'s trafficking in the hotel, and they loaned W.K.'s trafficker *rooms for free* so that W.K. could be sold for sex in the Motel 6 *first*, and *then* Defendants would be paid for those rooms.[12] Housekeepers removed evidence of trafficking from the rooms and destroyed it.[13] The type

---

[11] *Doe #1* is the only binding authority for this Court. 21 F.4th 714 (11th Cir. 2021). *Riti* misapplied *Doe #1*, committing significant and consequential errors. *First*, the Eleventh Circuit made it clear that "participation in a venture" for TVPRA civil-liability purposes requires only that the defendant "take part in a common undertaking involving risk or profit." *Id.* at 727. Importantly, that common undertaking does not need to be a sex trafficking venture. *Id.* at 730 (Jordan, J., concurring). *Second*, *Riti* incorrectly dismissed the distinction between franchisors and companies that own and operate hotels (like Defendants), finding it immaterial. 2024 WL 505063, at *3. This is a fundamental misreading of *Doe #1*, which concerned "claims against *franchisors that do not operate or manage the hotels* where sex trafficking allegedly occurred." 21 F.4th at 727 (Jordan, J., concurring) (emphasis added). Even so, Defendants' actions go beyond observation and constitute employee participation in Plaintiffs' trafficking. Because Defendants' actions also easily satisfy the erroneous *Riti* standard, Plaintiffs choose not to belabor this point.

[12] Dkt. No. [15] ¶¶ 25, 27, 41,47, 51–52.

[13] *Id.* ¶¶ 46, 50, 25.

of participation described above more than satisfies the second element of a TVPRA claim. *J.G.*, 619 F. Supp. 3d 1228; *see also* cases cited *supra* note 35.

### iii.    Defendants' venture violated the TVPRA as to Plaintiffs.

The venture in which Defendant participated committed a crime against Plaintiffs. To prove this element, the minor Plaintiffs (W.K. and J.T. at 17) must adduce evidence that they were "minors when [they were] forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe [them] on the premises." *D.H. v. Tucker Inn Inc.*, 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023) (citing *United States v. Whyte*, 928 F.3d 1317, 1328 (11th Cir. 2019)). The adult plaintiffs (Michal and J.T. as an adult) must adduce evidence that the venture in which Defendants participated

> knowingly harbor[ed] or [maintained] [the adult Plaintiffs] for commercial sex while knowing ... that means of force, threats of force, fraud, coercion ..., or any combination of such means will be used to cause the person to engage in a commercial sex act" *or* that the venture in which Defendants participated "knowingly benefit[ted], financially or by receiving anything of value from knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

*Doe #1*, 21 F.4th at 725 (cleaned up).

As to the child sex trafficking victims, W.K. and J.T. (at 17), they were each minors under the age of 18 when they were sold for sex at the Motel 6.[14] Their

---

[14] Dkt. No. [15] ¶¶ 33–35, 48.

traffickers both sold them for sex at that time.[15] And Defendants observed the child sex trafficking victims.[16] But Defendants did more than that as well. Defendants were also paid to act as lookouts to hide J.T.'s trafficking.[17] And Defendants provided W.K.'s trafficker with a free room so that he could raise the rent money by selling W.K. for sex and then pay Defendants for the room.[18]

As discussed above, *supra* note 9, the motel's knowing facilitation of W.K.'s and J.T.'s child sex trafficking also independently violated the TVPRA under § 1591(a)(1) and (a)(2) because the hotel knowingly harbored Plaintiffs under (a)(1) and knowingly benefitted under (a)(2).

As to the adult victims, Michal and J.T. as an adult, both Plaintiffs were sold for sex by force, fraud, or coercion at the motel.[19] And Defendants' employees again participated in the trafficking. As to force, both Michal and J.T. were beaten by their traffickers at and around the Motel 6.[20] As to knowledge, Defendants' front desk employee knew and was friendly with Michal's trafficker in a manner incredibly similar to *Ricchio*, watching him beat Michal and telling him only not to beat his

---

[15] *Id.* ¶¶ 33–35, 48.

[16] *Id.* ¶¶ 41, 46–47, 49–51.

[17] *Id.* ¶¶ 47, 51.

[18] *Id.* ¶¶ 52, 57.

[19] *Id.* ¶¶ 21–22, 27–28, 36, 127.

[20] *Id.* ¶¶ 27–28, 36.

victims in the lobby of the motel.[21] As to J.T., her trafficker paid Defendants' employees to conceal and hide J.T.'s trafficking at the Motel 6, which they did.[22]

Again, and as discussed above, *supra* note 9, the hotel's knowing facilitation of Michal's and J.T.'s adult sex trafficking also independently violated the TVPRA under § 1591(a)(1) and (a)(2) because the hotel knowingly harbored Plaintiffs under (a)(1) and knowingly benefitted under (a)(2).

Thus, Plaintiffs have satisfied their burden on the TVPRA's third element.

### iv. Defendants had actual knowledge that the venture violated the TVPRA as to the Plaintiffs.

Though Defendants try to repeatedly conceal this fact from the Court—a consequence of the copy-paste approach to litigating the same arguments in factually different cases—Plaintiffs FAC is replete with evidence that Defendants had *actual* knowledge of the venture violating the TVPRA as to the Plaintiffs.[23] Put simply, Defendants' employees were complicit in the child sex trafficking and violent adult sex trafficking of the Plaintiffs.

Defendants' employees knew Michal's trafficker and showed it in much the same way as the trafficker in *Ricchio*, even watching the trafficker beat Michal in

---

[21] *Id.* ¶¶ 27, 32.

[22] *Id.* ¶¶ 40–41.

[23] There is, of course, much evidence that Defendants *should have known* of Plaintiffs' trafficking as well, but that discussion is unnecessary when the higher burden is also met.

the lobby and simply asking the trafficker to conduct that business elsewhere.[24] J.T.'s traffickers paid Defendants' employees for their assistance in hiding and allowing the trafficking.[25] And W.K.'s trafficker had an arrangement with Defendants to receive free motel rooms to sell W.K. out of and then pay the motel.[26] There are other facts—housekeeper complicity, destruction of evidence—but the previous facts show Defendants had actual knowledge of each Plaintiffs' trafficking and chose to benefit from that horrific crime. No court in the country has held otherwise.[27]

## C.    Defendants' other TVPRA arguments are wrong.

### i.    *Modus operandi* evidence is relevant.

Defendant also argues that the witness affidavits attached to the FAC are "unrelated allegations of misconduct." Dkt. No. [19] at 3. Exhibit 2 is another victim who was sold for sex at the Motel 6 and who saw the activity the employees would have seen as well. Dkt. No. [15-2]. Exhibit 3 is another sex trafficking victim who was forced to have sex with one of Defendants' maintenance employees. Dkt. No. [15-3]. These are not unrelated incidents. This is admissible evidence that the

---

[24] *Id.* ¶¶ 27, 32.

[25] *Id.* ¶¶ 40–41.

[26] *Id.* ¶¶ 52, 57.

[27] *See* supra note 3.

Defendants' *modus operandi* and illegal policies, as exhibited in these similar incidents, were also enacted against each Plaintiff. Additionally, the facts of each Plaintiff and Defendants' mode of operation apply equally to each Plaintiff. That is how *modus operandi* evidence works.

The detailed factual evidence of numerous hotel staff members being directly involved in facilitating and knowingly permitting sex trafficking at the motel is evidence that the motel's *modus operandi* was to do just that: permit and facilitate sex trafficking, including child sex trafficking, at the motel because it was profitable for the motel to do so. Courts permit such *modus operandi* evidence in TVPRA cases to prove knowledge that a defendant facilitated Plaintiffs' sex trafficking. For example:

> Under the TVPRA, courts have allowed a showing of a defendant's modus operandi to be sufficient for establishing knowledge. *See Ardolf v. Weber*, 332 F.R.D. 467, 475 (S.D.N.Y. 2019) (ruling that establishing the defendant's modus operandi was a permitted method to demonstrate knowledge under the TVPRA); *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010) ("What the [TVPRA] requires is that the defendant know in the sense of being aware of an established modus operandi that will in the future cause a person to engage in prostitution"); *Boyce v. Weber*, No. 19-CV-3825 (JMF), 2021 WL 2821154, at *4–6 (S.D.N.Y. July 7, 2021) (permitting modus operandi to establish knowledge under the TVPRA). Courts have also found that a defendant's actions subsequent to the events charged in a suit were permitted to show the defendant had a modus operandi. *Turner v. United States*, 426 F.2d 480, 483–84 (6th Cir. 1970) (allowing evidence of stolen automobiles after the charged theft to prove defendant's modus operandi); *United States v. Goodwin*, 492 F.2d 1141, 1154 (5th Cir. 1974) (articulating that a subsequent incident is permitted to show modus operandi if the subsequent act "bears such a high degree of similarity as to mark it as the handiwork of the accused").

*Treminio v. Crowley Mar. Corp.*, No. 3:22-cv-174, 2024 WL 382400, at *6 (M.D. Fla. Feb. 1, 2024), *reconsideration denied,* No. 3:22-cv-174, 2024 WL 1050514 (M.D. Fla. Mar. 11, 2024).

*Modus operandi* evidence may be used to show knowledge, lack of mistake, and identity. *Id.* The allegations support the inference that Defendants' interactions with each Plaintiff were not unknowing mistakes, but rather, that the motel operated in accord with its usual practices and policies in knowingly enabling sex trafficking as described in Exhibit 3 to the FAC. Dkt. No. [15-3]. It also supports the inference that Defendants committed similar acts of participation as to each Plaintiff.

To prove identity by *modus operandi*, the Eleventh Circuit looks at the similarities between the alleged crimes. *United States v. Acevedo*, 860 F. App'x 604, 610 (11th Cir. 2021). In *Acevedo*, the Court of Appeals affirmed the use of *modus operandi* evidence of other crimes where the crimes were close in time (within a year), location, and nature. *Id.* Here, comparing the participation in each witness and Plaintiff's sex trafficking, the crimes occurred within a year of each other,[28] at the same hotel, and involved nearly identical conduct—sex trafficking concealed by hotel staff who accepted payment or sex, and who witnessed clear signs of abuse. Thus,

---

[28] At least one Plaintiff was trafficked at the Motel 6 each year from 2012–2016.

this evidence strongly supports both the hotel's identity as a participant and its knowledge, as alleged in the FAC. *Id.*; *Treminio*, 2024 WL 382400, at *6.

Because Defendant's participation and knowledge may be proved by this *modus operandi* evidence, Defendant's motion should be denied.

> ii. **Defendants' *Riti* arguments are wrong, but even if they weren't, that standard is met by the egregious facts of this case.**

The *Riti* opinion is wrong for a number of reasons. *See supra* note 11. Among the reasons are some articulated by this Court prior to the *Riti* opinion's existence. For example, the *Riti* case misses entirely the distinction that in *Doe #1*, the plaintiffs were held to proving a "sex trafficking venture" only because they pled a "sex trafficking venture," and one against franchisors at that. *Doe #1*, 21 F.4th at 726 ("Over and over, they repeated this phrase: sex trafficking venture. In fact, every single reference to a "venture" in the complaints refers to a 'sex trafficking venture.'"). The unpublished, non-binding *Riti* opinion makes the classic mistake of taking an application of the law to a specific factual situation, and making a blanket rule out of it, changing the legal standard from constructive to actual knowledge. *Riti*, 2024 WL 505063, at *3 (applying "sex trafficking venture" yardstick despite the complaint not alleging it). But as the Eleventh Circuit held in *Doe #1*, that type of "knowing" standard "make[s] no sense" with the "should have known" beneficiary claim. *Doe #1*, 21 F.4th at 724.

This Court has articulated that precise distinction before, and should do so again in this case:

> The [*Doe #1*] court found that none of the allegations suggested that the franchisors *participated* in a sex-trafficking venture with the plaintiffs' traffickers, concluding that "observing something is not the same as participating in it." The court further noted that the plaintiffs had alleged that the ventures at issue were *sex-trafficking* ventures and thus that its opinion did not address whether the plaintiffs would have stated plausible claims had they alleged simply that the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the TVPRA.

*A. J.*, 2023 WL 6193013, at *2 (citations omitted).

Still, the Court need not decide whether *Riti* is right or wrong because Plaintiffs meet its higher bar.[29] For that additional reason, Defendants' motion should be denied.

---

[29] If the Court does decide to follow *Riti*, the Court must separately determine whether that opinion is correct and persuasive to the point that it should be followed. "As a preliminary matter, we pause to reiterate an elemental point: While our unpublished opinions 'may be cited as persuasive authority,' they 'are not considered binding precedent.' 11th Cir. R. 36-2. We have said so again and again, but it bears repeating. Accordingly, a district court shouldn't simply cite to one of our unpublished opinions as the basis for its decision without separately determining that it is persuasive. Here, the district court did just that—it treated *Cawthorn [v. Auto-Owners Ins. Co.*, 791 F. App'x 60 (11th Cir. 2019),] as binding authority and failed to determine whether that decision correctly analyzed Florida law. For reasons we'll explain, *Cawthorn* didn't properly analyze Florida law, and the district court shouldn't have followed it." (cleaned up)). *McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022).

### D.    Defendants' public nuisance arguments are wrong.

#### i.    Defendants argue they should be able to allow sex trafficking at their hotel without violating Georgia law.

Defendants make the incredible argument (citing no authority or evidence) that because someone would have trafficked Plaintiffs somewhere, the fact that "Defendants permitted illegal activities to occur" at their hotel does not state a claim for public nuisance. Dkt. No. [19] at 20. In Defendants' view, if someone will be trafficked *anywhere*, then Defendants can allow and profit from that trafficking at their hotel—and Georgia nuisance law is powerless to do anything about it. This, of course, is not the law. But the perverse and indefensible morality underlying Defendants' argument reveals why their misconduct demands punitive damages.

First, a "lewd house" is one in which prostitution occurs. *Coleman v. State*, 5 Ga. App. 766, 64 S.E. 828, 829 (1909). And "[a] lewd house is per se a 'public nuisance.'" *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332, 332 (1916). Even a *single act* of prostitution at a hotel—and even one committed *without* the Defendant's actual knowledge—is sufficient to sustain a conviction for maintaining a lewd house at a hotel that also provides legal food and lodging. *Fitzgerald v. State*, 10 Ga. App. 70, 72 S.E. 541, 541 (1911).[30]

---

[30] "Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd

Plaintiff has alleged that Defendants owned, operated, and maintained the Motel 6 and that prostitution and sex trafficking happened there with Defendants' actual and constructive knowledge.[31]

The best and most comprehensive analysis of public nuisance in this scenario in the last 100 years is the recent opinion by Judge Mike Jacobs in the State Court of Dekalb County. *See* Ex. 2, *Jane Doe v. Suresh & Durga, Inc.*, No. 20-A-83795-5 (Dekalb Cnty. May 8, 2024). After giving an extensive history of public and private nuisance law and the law surrounding lewd houses as nuisances, Judge Jacobs addressed the same "control" argument Defendants make in this case. He found:

> The record contains sufficient competent evidence, recited in Section I of this Order, *supra*, for a jury to conclude that acts of prostitution or other unlawful sexual activities were practiced in the Motel over some time with, at minimum, constructive knowledge and tacit approval of the Defendant. See *Cotton* [*v. City of Atlanta*, 10 Ga. App. 397, 399 (1912)]; *Birdwell* [*v. State*, 112 Ga. App. 836, 836-37 (1965)]; *Fitzgerald*, 10 Ga. App. at 72-75. The Court finds that whether Defendant kept or maintained a disorderly house or a lewd house is in genuine dispute. Because such disorderly houses and lewd houses are public nuisances per se, the Court can deduce the existence of a genuine issue of material fact as to all issues raised regarding Plaintiff's common law public nuisance claim save the issue of proximate cause.

> As to proximate cause for Plaintiff's injuries, the jury in this case will be able to consider much more than simply impermissible speculation. There are indicia of relationships between the nonparty wrongdoers and Defendants from which a jury could draw a causal connection between

women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests."

[31]Dkt. No. [15] ¶¶ 1, 11–12, 16, 18, 20–57, 59–79, 91–94, 99, 101–102.

the maintenance of a public nuisance per se and Plaintiff's personal in-
juries. The Court cannot say that the purported causal connection rests
only on speculation or mere possibilities. *See Stadterman v. Southwood
Realty Co*., 361 Ga. App. 613, 615 (2021). Indeed, assuming a jury
finds that Defendant kept or maintained the Motel as a disorderly or
lewd house where people were being sold for sex, it would be entirely
rational for a jury to find that Plaintiff's personal injuries to her life and
health before, during, and after being sold for sex at the Motel were the
natural and proximate result of the nuisance. See *Brimberry* [*v. Savan-
nah Fla. & W. Ry. Co.*, 78 Ga. 641, 645–56 (1887)].

*Suresh & Durga,* No. 20-A-83795-5, at *10–11; *see also E.M. v. Tucker Inn Inc*.,

1:22-cv-2559, 2024 WL 4005218, at *6 (N.D. Ga. July 15, 2024) ("In addition to

producing evidence that the hotel is a nuisance per se . . . Plaintiff has also produced

evidence that 'by reason of its location or by reason of the improper or negligent

manner in which it [was] conducted,' the operation of the hotel 'cause[d] hurt, in-

convenience, or damage" to Plaintiff.'").

Similarly, Plaintiff's allegations, *supra* note 312, satisfy that Defendant op-

erated a public nuisance per se. And Defendants' statement that Plaintiffs fail to

allege that Defendants controlled the nuisance is yet another untrue statement to the

Court. Plaintiffs specifically alleged Defendants' control in Paragraph 115 of the

FAC.[32]

---

[32] "Defendants controlled the nuisance because they controlled the motel. They
could have *not* allowed the rampant prostitution and sex trafficking at the Motel 6,
including Plaintiffs, but instead chose to facilitate, conceal, and participate in that
activity so that they could reap the ill-gotten profits of Plaintiffs, and others, suffer-
ing."

As such, Defendants' argument is meritless and should be denied.

### ii.    Public nuisance has no statute of limitations.

Defendants' argument that Plaintiffs' public nuisance claim is barred by a two-year statute of limitations is also wrong. Public nuisance is not governed by a traditional statute of limitations and, indeed, has no statute of limitations at all because it is improper to impute laches to the public. This has been the law in Georgia for over 150 years and remains the law today.[33] *McArthur v. Beech Haven Baptist Church of Athens*, 361 Ga. App. 877, 864 S.E.2d 189, 193 (2021) (Holding that "[a] public nuisance claim is not governed by a traditional statute of limitation" when addressing claims from the 1950s to the 1980s.); *reaffirmed by McArthur v. Beech Haven Baptist Church of Athens*, 368 Ga. App. 525, 890 S.E.2d 427, 438 (2023)

---

[33] *See also, Doe v. Saint Joseph's Catholic Church*, 357 Ga. App. 710, 716, 850 S.E.2d 267, 273 (2020), *reversed and vacated on other grounds,* 313 Ga. 558, 870 S.E.2d 365 (2022), and 365 Ga. App. 331, 878 S.E.2d 575 (2022) (Noting that public nuisance "is not governed by a traditional statute of limitations" and thus 42-year-old allegations not outside the statute of limitations for public nuisance); *Davis v. City of Forsyth*, 275 Ga. App. 747, 621 S.E.2d 495, 499 (2005) ("The ... statute of limitations does not run in favor of ... public nuisances [because] of the impropriety of imputing laches to the public.") (alterations in original); *Anneberg v. Kurtz*, 197 Ga. 188, 194, 28 S.E.2d 769, 773 (1944) (same); *Loughridge v. City of Dalton*, 166 Ga. 323, 143 S.E. 393, 395 (1928) (same); *Watkins v. Pepperton Cotton Mills*, 162 Ga. 371, 134 S.E. 69, 71 (1926) (same); *Norrell v. Augusta Ry. & Elec. Co.*, 116 Ga. 313, 42 S.E. 466, 467 (1902) (same); *Phinizy v. City Council of Augusta*, 47 Ga. 260, 268–69 (1872) ("The rule that the statute of limitations does not run in favor of a nuisance, only applies to public nuisances, and grows out of the impropriety of imputing laches to the public.").

("Finally, we reaffirm our holdings in *McArthur I* that were not implicated by the Supreme Court's decision in *St. Joseph's*.).

Because there is no statute of limitations for a public nuisance claim, Defendants' motion on that point should also be denied.

### E.  Defendants' arguments as to Masha's law are derivative.

Defendants simply make reference to their TVPRA arguments to argue that Plaintiffs J.T. and W.K. do not state a claim under Masha's law. For the reasons above, *supra* at 9–20, Plaintiffs have also stated perpetrator claims against Defendants, which state a claim for such childhood sexual abuse and sex trafficking against Defendants. Thus, their motion should be denied.

### F.  Punitive damages are warranted.

Defendant makes no argument whatsoever in support of its single statement that Plaintiffs' claims for punitive damages should be dismissed. Dkt. No. [19] at 6. Because Defendants' motion is meritless and misstates the entire FAC, this request also should be denied.

### CONCLUSION

The allegations in Plaintiffs' Complaint, taken as true, plainly state claims against Defendants. Based on the above and foregoing, Plaintiff respectfully asks that the Court deny Defendants' Motion.

*[signatures on following page].*

25

This 6th day of June, 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Jonathan S. Tonge*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile