**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| JANE DOE, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CIVIL ACTION FILE NO. |
| | } | 20A83795-5 |
| SURESH & DURGA, INC., | } | |
| | } | |
| Defendant. | } | |
| | } | |

<u>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT**</u>
<u>**AS TO PLAINTIFF'S NUISANCE CLAIMS**</u>

Before the Court for a second time is Defendant's Motion for Summary Judgment (the "Motion"), which Defendant filed on April 1, 2022. The Motion generally contested Plaintiff's premises-liability-based negligence and nuisance claims and her O.C.G.A. § 13-6-11 claim. This Court denied the Motion and, after an interlocutory appeal, the Court of Appeals affirmed this Court's decision regarding Plaintiff's negligence claims. *Suresh & Durga, Inc. v. Doe*, 369 Ga. App. 787, 797 (2023). For lack of clarity as to the species of nuisance claims asserted by Plaintiff, the Court of Appeals vacated the remainder of this Court's decision to the extent it pertained to Plaintiff's nuisance and attorney's fees claims and remanded them for further proceedings. *Id.* (pointing to Plaintiff's then-non-specific claims of "private or public nuisance, or both").

Upon this Court's adoption of the remittitur, Plaintiff filed her Second Amended Complaint and clarified her nuisance claims. The Second Amended Complaint states one count of nuisance with alternative claims of common law public nuisance, common law private nuisance, and statutory nuisance under O.C.G.A. § 41-3-1. Defendant filed a supplemental brief in support of its Motion, contesting the nuisance claims and restating its arguments as to Plaintiff's O.C.G.A. § 13-6-11 claim. The Court then heard oral argument on these remaining issues on February 2, 2024.

## I.     <u>Background</u>

Plaintiff's Second Amended Complaint alleges that Defendant owns and operates the America's Best Inn & Suites at 4095 Covington Highway, Decatur, Georgia 30032 (the "Motel"). 2d Am. Compl. ¶¶ 9, 11. Plaintiff alleges that Defendant "knew of, condoned, and permitted widespread prostitution . . . and ultimately sex trafficking" at the Motel and that Defendant has "profited from the frequent rental of rooms . . . used for prostitution and sex trafficking, including the room in which Plaintiff was trafficked as a minor." *Id.* ¶¶ 15-16. As a result, Plaintiff alleges that she became a victim of child sex trafficking and suffered damages to her health. *Id.* ¶¶ 19, 81. For the nuisance claims, Plaintiff seeks monetary damages, not abatement. *Id.* ¶¶ 81, 85, 89; *see also* O.C.G.A. §§ 41-1-3, 41-2-5, 41-3-13. Plaintiff's O.C.G.A. § 13-6-11 claim for attorney's fees and expenses of litigation is grounded in Defendant's bad faith, stubborn litigiousness, and causing Plaintiff unnecessary trouble and expense. 2d Am. Compl. ¶ 91.

Read in the light most favorable to Plaintiff, the record reflects the following: On November 27, 2016, nonparty Bryant Owens took Plaintiff, who was then a 17-year-old child, to a room toward the back side of Defendant's Motel. Doe Dep. at 184, 225. Mr. Owens then sold Plaintiff for sex for $50.00. *Id.* at 234. Upon Mr. Owens' return to collect the money received by Plaintiff, he brought an accomplice, nonparty Sherica Williams, who physically attacked Plaintiff. *Id.* at 236. Mr. Owens took the money and left the scene. Ms. Williams took Plaintiff's belongings, including her clothes, but remained at the Motel. *Id.* at 236–37, 243–44.

Plaintiff fled the room naked, covered only in a Motel blanket, to the Motel's lobby. *Id.* at 237. Plaintiff begged the Motel's staff for help, but her prayers were met with derision and instructions to return to her room. *Id.* In the face of Motel staff's steadfast refusals to call the

police, Plaintiff pulled a fire alarm. *Id.* The Motel's staff did not relent, but Plaintiff gained access to a phone in the Motel lobby and called the police. *Id.* at 246.

Plaintiff's sworn testimony is accompanied by the sworn testimony of four others that describe performing sex acts at the Motel either by independent solicitation, by being pimped out, or by being trafficked for sex. Each of their stories share common threads. They speak in unison on various points, *e.g.,* regular references to the "back side" of the Motel in connection with sex trafficking or sex work. Doe Dep. at 225; H.L.B. Dep. at 23; C.P. Dep. at 97; C.H. Dep. at 13; M.R. Dep. at 19. A theme emerges from this evidence: sex traffickers used the Motel repeatedly, openly, and obviously to sell young girls and women for sex in a manner that, at minimum, supports the inference of acquiescence and constructive knowledge on the part of Defendant regarding such use of the Motel. *See* C.H. Dep. at 15–26; C.P. Dep. at 17–20; H.L.B. Dep. at 17–26, 65–68; M.R. Dep. at 21–25. Defendant "didn't care if pimps were selling girls for sex — they were fine with that." M.R. Dep. at 99–100. Hotel staff were well-aware of the sex traffickers, pimps, and prostitutes. *Id.* at 97. Numerous police reports, a reliable and qualified expert witness, and an experienced officer of the DeKalb County Police Department with relevant personal knowledge all reinforce this image of the Motel. *See* Gibbs Dep. at 30; Villines Dep. at 75.

Plaintiff's premises liability negligence claims survived summary judgment on this record. *Suresh & Durga*, 369 Ga. App. at 796. Thus, the question at this stage is: do Plaintiff's nuisance and O.C.G.A. § 13-6-11 claims survive? The Court finds that, in part, they do. However, Plaintiff overstates the legal basis for her nuisance claim. Ultimately, the Court concludes that Plaintiff's common law public nuisance claim and O.C.G.A. § 13-6-11 claim withstand summary judgment.

## II.    Analysis

### A.    Summary Judgment Standard of Review

The same summary judgment standard that applied to Plaintiff's negligence claims also applies to Plaintiff's nuisance and attorney's fees claims. *Suresh & Durga*, 369 Ga. App. at 787–88. On review of Defendant's Motion, the Court "must view the pleadings and evidence in the light most favorable to [Plaintiff], it must accept the credibility of the evidence upon which [Plaintiff] relies, it must afford that evidence as much weight as it reasonably can bear, and to the extent that the [Defendant] points to conflicting evidence, it must discredit that evidence for purposes of the [M]otion. [Plaintiff] is not required to produce evidence demanding judgment for it, but [Plaintiff] is only required to present evidence that raises a genuine issue of material fact." *Id.* at 788 (citations and punctuation omitted).

### B.    Nuisance Generally

"There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.'" *Cox v. De Jarnette*, 104 Ga. App. 664, 674 (1961) (quoting WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS 389 (2d ed. 1955)). Yet, in this context, impenetrable does not mean indiscernible. "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. This statutory definition was "not intended to change the common-law definition of a nuisance;" rather, it adopts the common law meaning of nuisance. *State ex rel. Boykin v. Ball Inv. Co.*, 191 Ga. 382, 389 (1940) (citing *Hill v. McBurney Oil & Fertilizer Co.*, 112 Ga. 788, 793 (1901)); *see also Sons of Confederate Veterans v. Henry Cty. Bd. of Comm'rs*, 315 Ga. 39, 58 n.14, 60 n.17 (2022); *Camelot Club Condo. Ass'n v. Afari-Opoku*, 340 Ga. App. 618, 628 (2017); 3 WILLIAM BLACKSTONE, COMMENTARIES *216 ("public or common nuisances . . . affect the public, . . . are an annoyance to all . . . [and] we must refer them to the class of public

4

wrongs, or crimes and misdemeanors; and private nuisances . . . may be defined [as] any thing done to the hurt or annoyance to the lands, tenements, or hereditaments of another").[1]

"The expression 'may otherwise be lawful' [in O.C.G.A. § 41-1-1] shows that the act complained of, in so far as it causes 'hurt, inconvenience, or damage to another' must be unlawful, that is, a violation of some right of plaintiff, to constitute a nuisance. Nuisance being an indirect tort, there is no presumption of damages from its maintenance; and the plaintiff, in order to recover . . . must show the fact of the nuisance and consequent damages to her. The first question, therefore, for decision is, whether the [condition at issue] is a nuisance per se." *Simpson v. Du Pont Powder Co.*, 143 Ga. 465, 466 (1915).

"A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings." *Id.* (citing 29 CYCLOPEDIA OF LAW AND PROCEDURE 1153 (William Mack ed., 1908); JOSEPH A. JOYCE & HOWARD C. JOYCE, TREATISE ON THE LAW GOVERNING NUISANCES, § 16 (1906)). "By far the larger class of nuisances is that which may be termed nuisances in fact or nuisances per accidens, and consists of those acts, occupations, or structures which are not nuisances per se but may become nuisances by reason of the circumstances or the location and surroundings." *Id.* (citing 29 CYCLOPEDIA, *supra*, at 1154). When a claimant asserts that a defendant has kept or maintained a nuisance per se, and the condition is ostensibly lawful, a further fact question will arise as to whether the condition constitutes a nuisance per se. *See Griggs v. City of Macon*, 154 Ga. 519, 528–29 (1922) (requiring, on due process grounds, a hearing to determine whether a hotel was

---

[1]    Earlier attempts by Plaintiff to distinguish a public nuisance claim under O.C.G.A. § 41-1-2 from a common law public nuisance claim are thus distinctions without a difference. A public nuisance claim grounded in O.C.G.A. § 41-1-2 is for all intents and purposes a common law nuisance claim authorized by codification and vice versa.

being operated as disorderly house or lewd house); *see also Galaxy Carpet Mills, Inc. v. Massengill*, 255 Ga. 360, 360–61 (1986) (citing *Ga. R.R. & Banking Co. v. Maddox*, 116 Ga. 64 (1902); *Bacon v. Walker*, 77 Ga. 336 (1886)).

In any event, no defendant will be liable for a nuisance unless the claimant shows that her injuries were the natural and proximate result of the wrongdoer's creation, maintenance, or continuance of a nuisance. *See Brimberry v. Savannah Fla. & W. Ry. Co.*, 78 Ga. 641, 645–46 (1887); *Fielder v. Rice Constr. Co.*, 239 Ga. App. 362, 366 (1999) ("[T]he essential element of nuisance is control over the cause of the harm. . . . The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance.").

## C.    Private Nuisance

### 1.    Private Nuisance Generally

"Nuisances are either public or private. . . . A private nuisance is one limited in its injurious effects to one or a few individuals." O.C.G.A. § 41-1-2. "The common law and the Restatement of Torts restrict the action for private nuisance to invasions of interest in the use and enjoyment of land . . . ." *Cox*, 104 Ga. App. at 675. "A plaintiff in a [private] nuisance action may recover for property damage or personal injuries, *see* O.C.G.A. § 41-1-4, but not without first establishing 'a real and appreciable interference with the plaintiff's use and enjoyment of his land.'" *Blondell v. Courtney Station 300 LLC*, 362 Ga. App. 1, 14 (2021) (quoting RESTATEMENT (SECOND) OF TORTS § 821F cmt. c (1979)). Without evidence of interference with and invasion of a plaintiff's own interest in the use and enjoyment of land, that plaintiff's private nuisance claim will fail. *See Blondell*, 362 Ga. App. at 14 n.5, 15–16 (citing RESTATEMENT (SECOND) OF TORTS § 822 cmt. b (1979)); *see also Landings Ass'n, Inc. v. Williams*, 309 Ga. App. 321, 329–30 (2011), *rev'd on other grounds by Landings Ass'n, Inc. v. Williams*, 291 Ga. 397 (2012), *reinstated in relevant part by Landings Ass'n, Inc. v. Williams*, 318 Ga. App. 760 (2012).

### 2.      *Plaintiff's Private Nuisance Claim Fails*

Plaintiff's private nuisance claim may be addressed with brevity. Simply put, Defendant has shown the Court a lack of evidence that an injury in this case flowed from an interference or invasion of Plaintiff's own interest in the use and enjoyment of land, *i.e.,* that Plaintiff had a possessory interest in the Motel and that Defendant interfered with Plaintiff's use and enjoyment of Plaintiff's land. *See Blondell*, 362 Ga. App. at 14. The evidence in the record and the allegations of the Second Amended Complaint make clear that, despite other remaining triable issues concerning Defendant's liability, there is no evidence to support a private nuisance claim.

### D.    **Public Nuisance**

### 1.      *Public Nuisance Generally*

"A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. "A public nuisance generally gives no right of action to any individual. However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action." O.C.G.A. § 41-1-3. As with the definition of a nuisance generally, the type of injury required to sustain a common law private action for damages for a public nuisance derives from the common law without any material alteration by the General Assembly. *See Sons of Confederate Veterans*, 315 Ga. at 58 n.14, 60 n.17 (discussing early codification practices and comparing standing requirements for mandamus relief with those necessary for a public nuisance action); *see also* 3 BLACKSTONE, *supra*, *216; 4 BLACKSTONE, *supra*, *166–67.

The special or extraordinary damage must be of a different kind than that damage experienced by the public. O.C.G.A. § 41-1-3; *Savannah, Fla. & W. Ry. Co. v. Parish*, 117 Ga. 893, 895 (1903). A personal injury to life and health is always a different kind of damage than that experienced by the public sufficient to meet the requirement of special or extraordinary

damage for maintaining a private action for public nuisance. *Parish*, 117 Ga. at 896. In sum, a claimant may maintain a private action for damages by way of public nuisance where she asserts personal injuries to life and health that are the natural proximate result of a wrongdoer's simultaneous interference with a public right and a personal right of the claimant.

### 2. *Disorderly Houses, Bawdy Houses, Lewd Houses, Houses of Prostitution, Houses of Ill-Fame, and Houses of Assignation are Public Nuisances Per Se*

The common law recognized disorderly houses as public nuisances per se and encompassed within that definition bawdy houses, lewd houses, houses of prostitution, houses of ill-fame, and houses of assignation. *See Fanning v. State*, 17 Ga. App. 316, 317 (1915) ("The specific kinds of disorderly houses which are regarded in law as nuisances per se are bawdy-houses and gaming-houses.") (quoting 14 CYCLOPEDIA, *supra*, at 484); *see also Brindle v. Copeland*, 145 Ga. 398, 398 (1916) (citing 4 BLACKSTONE, *supra*, at *168; JOYCE & JOYCE, *supra*, § 12). The offense of keeping a disorderly house adopted in Georgia's first Penal Code imported the common law construction of that offense and remains the law in Georgia today. *See Martin v. State*, 62 Ga. App. 902, 904–05 (1940) (discussing common law disorderly houses generally); *see also Thrower v. State*, 117 Ga. 753, 757 (1909) (discussing common law construction of statute prohibiting the keeping of a gaming house, a public nuisance). "A charge of keeping and maintaining a common, ill-governed and disorderly house to encourage idleness, gaming, drinking, or other misbehavior, may be shown by proof of repeated immoral acts of [prostitution or other unlawful sexual acts] committed therein with the knowledge and approval of defendant." *Birdwell v. State*, 112 Ga. App. 836, 837 (1965) (citing *Martin*, 62 Ga. App. at 904); *see also Cotton v. City of Atlanta*, 10 Ga. App. 397, 399 (1912).

Beyond the recognition of disorderly houses as public nuisances per se, Georgia law also specifically deems lewd houses and houses of prostitution to be public nuisances per se. *Brindle*,

145 Ga. at 398; *Kessler v. State*, 119 Ga. 301, 303 (1904) (discussing common law lewd houses generally). The present criminal statute prohibiting lewd houses does not expressly use the term "lewd house," which was used in codifications prior to the general revision of the Criminal Code in 1968, but it continues the ancient prohibition on maintaining and keeping a lewd house. *See Shealy v. State*, 142 Ga. App. 850, 851. *Compare* Ga. Code Ann. § 26-6102 (1933), *repealed by* 1966 Ga. L. 1968, p. 1249, *with* O.C.G.A. § 16-6-10. While expressly targeting keeping a house for the purpose of prostitution, this prohibition is similar to the general prohibition regarding disorderly houses. A jury may find that a defendant kept or maintained a lewd house by proof that acts of prostitution were practiced in the house over some time with the knowledge and approval of the defendant. *Birdwell*, 112 Ga. App. at 836; *Frazier v. State*, 93 Ga. App. 204, 206–07 (1956).

To be clear, "house" is a broad term in these contexts, and an inn, motel, lodge, or hotel may be a disorderly house or a lewd house. *See Clifton v. State*, 53 Ga. 241, 244 (1874); *Martin*, 62 Ga. App. at 904. Indeed, the Court of Appeals made that principle clear over a century ago, sustaining a jury's guilty verdict on the charge of maintaining a lewd house involving a lodging house where the following was true:

> Only one act of sexual intercourse was directly proved, and it was not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging-house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests.

*Fitzgerald v. State*, 10 Ga. App. 70, 71–72 (1911). The Court of Appeals went on to affirm the defendant's conviction by looking to the evidence of the defendant's constructive knowledge and circumstantial evidence that prostitutes had used the house as a "lewd resort." *Id.* at 73–75. Despite the absence of direct evidence of the defendant proprietor's knowledge of the things occurring at

his lodging house, the court said "[h]e can not shut his eyes to what is going on around him, for the purpose of avoiding knowledge, and then defend on the ground of his lack of knowledge." *Id.* at 72. Evidence of reputation and circumstance included proof of "certain transactions between women and men which occurred in the presence of the accused, and which ought to have informed any reasonable man that his house was being used for purposes of prostitution. Indeed, in the light of all the evidence, it is hardly probable that the things which the witnesses swear took place could have occurred without a reasonably watchful innkeeper knowing that lewd women were making a resort of his house for the purpose of carrying on their practices." *Id.* at 73.

### 3.    *Plaintiff's Common Law Public Nuisance Claim Survives*

Defendant argues that Plaintiff's common law public nuisance claim fails because the condition was insufficiently regular or continuous to constitute a nuisance, because not all persons that come within the sphere of the operations of the business were injured, because Defendant operated the Motel lawfully, and because Plaintiff failed to establish proximate cause, notice, and control over the harm. The Court disagrees.

The record contains sufficient competent evidence, recited in Section I of this Order, *supra*, for a jury to conclude that acts of prostitution or other unlawful sexual activities were practiced in the Motel over some time with, at minimum, constructive knowledge and tacit approval of the Defendant. *See Cotton*, 10 Ga. at 399; *Birdwell*, 112 Ga. App. at 836–37; *Fitzgerald*, 10 Ga. App. at 72–75. The Court finds that whether Defendant kept or maintained a disorderly house or a lewd house is in genuine dispute. Because such disorderly houses and lewd houses are public nuisances per se, the Court can deduce the existence of a genuine issue of material fact as to all issues raised regarding Plaintiff's common law public nuisance claim save the issue of proximate cause.

As to proximate cause for Plaintiff's injuries, the jury in this case will be able to consider much more than simply impermissible speculation. There are indicia of relationships between the

nonparty wrongdoers and Defendants from which a jury could draw a causal connection between the maintenance of a public nuisance per se and Plaintiff's personal injuries. The Court cannot say that the purported causal connection rests only on speculation or mere possibilities. *See Stadterman v. Southwood Realty Co.*, 361 Ga. App. 613, 615 (2021). Indeed, assuming a jury finds that Defendant kept or maintained the Motel as a disorderly or lewd house where people were being sold for sex, it would be entirely rational for a jury to find that Plaintiff's personal injuries to her life and health before, during, and after being sold for sex at the Motel were the natural and proximate result of the nuisance. *See Brimberry*, 78 Ga. at 645–46.

The record in this case is substantial. There is sufficient evidence in the record as to each of these issues raised regarding Plaintiff's common law public nuisance claim for a jury to consider. "[W]hether or not the acts of the [D]efendant constituted a public nuisance, as contended by the [P]laintiff and denied by the [D]efendant are issues for the jury to determine." *City of College Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 210 (2008) (quoting *Scott v. Reynolds*, 70 Ga. App. 545, 549 (1944)).

**E.    Plaintiff's Statutory Nuisance Per Se Theory is Misplaced**

Looking next to Plaintiff's statutory nuisance theory, Defendant's Motion and supplemental briefing argue that Plaintiff's O.C.G.A. § 41-3-1 claim fails for two primary reasons. First, Defendant asserts that the Motel was not used for the purpose of a public nuisance. That argument, as discussed *supra*, is foreclosed by triable issues for resolution by a jury. Defendant's second argument is that O.C.G.A. § 41-3-1 does not alter the requisite showing to establish a common law public nuisance. The Court agrees with Defendant's argument on this point.

To the extent that Plaintiff asserts a third nuisance claim based on O.C.G.A. § 41-3-1, *see* 2d Am. Compl. ¶ 88, that theory is not properly grounded. *See Star Residential, LLC v. Hernandez*, 311 Ga. 784, 790 (2021). To the extent that Plaintiff alternatively argues that an abatable nuisance

per se under Chapter 3 of Title 41 must be a common law nuisance per se under Chapter 1 of Title 41 for which an action for damages or abatement will lie, that places the cart before the horse. A nuisance per se under O.C.G.A. § 41-3-1 and the rest of Chapter 3 of Title 41 may very well also be a common law nuisance per se, but the latter is the font of a damages remedy in a private action and the former is not.

When interpreting statutes, the Court presumes "that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [and] if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." *Star Residential*, 311 Ga. at 785 (quoting *Deal v. Coleman*, 294 Ga. 170, 172–73 (2013)). "[I]n construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole." *Id.* (quoting *Lyman v. Cellchem Intl., Inc.*, 300 Ga. 475, 477 (2017)). "[W]e must [also] presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it." *Chase v. State*, 285 Ga. 693, 695 (2009) (citing *Retention Alts., Ltd. v. Hayward*, 285 Ga. 437 (2009); *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700–01 (1940)).

O.C.G.A. § 41-3-1 and Chapter 3 of Title 41 of the Code have their origins in a 1917 Act of the General Assembly to expand the powers of courts of equity. *See* 1917 Ga. L. 177. Before the 1917 act, the abatement powers of courts of equity were limited to abatement by injunction only, *i.e.*, the equity courts could not abate a nuisance business by ordering that it be closed. *Davis v. Stark*, 198 Ga. 223, 230–31 (1944); *Brindle*, 145 Ga. 398 (partially affirming a trial court's

abatement of a lewd house as a public nuisance per se while directing the trial court to modify judgment to eliminate order of closure). In the face of this legal backdrop, the 1917 Act authorized, among other things, abatement via an order of closure of lewd houses, houses of assignation, and houses of prostitution, taxation of costs, and a $300.00 judgment issued in the name of the State after issuance of a permanent injunction. 1917 Ga. L. 177. Many provisions of that Act remain substantially in place today. *See* O.C.G.A. §§ 41-3-6, 41-3-7, 41-3-10. In pertinent part, and importantly for purposes of the instant case, neither the Act nor its subsequent iterations purport to authorize an award of damages in a private action. 1917 Ga. L. 177; *Davis*, 198 Ga. at 230–31.

From its original enactment in 1917, the statute that is now codified at O.C.G.A. § 41-3-1 has been amended three times — in 1975, 1979, and 2019.[2] *See* 1975 Ga. L. 402; 1979 Ga. L. 1025; 2019 Ga. L. 74. At no point has that statute's text, or the text of Chapter 3 of Title 41, purported to authorize a private cause of action for damages separate and independent of a private common law cause of action for nuisance. *Cf.* O.C.G.A. §§ 41-1-3 (right of action for individuals specially damaged); 41-2-1 (abatement of "manifestly injurious" nuisance). This is not to say that a damages remedy is precluded. As recognized by the Georgia Supreme Court "[t]he act of 1917 create[d] a cumulative remedy." *Griggs*, 154 Ga. at 527. It is only to say that the version of O.C.G.A. § 41-3-1 in effect at the time of the incidents underlying this suit clearly pertains to equitable abatement under Chapter 3 of Title 41 while providing a sort of streamlined method for determining whether an abatable nuisance under that chapter exists. *See* O.C.G.A. § 41-3-1.

---

[2]     A version of O.C.G.A. § 41-3-1 existed in 2016 at the time of Plaintiff's sexual trafficking at Defendant's Hotel; however, the text extracted from O.C.G.A. § 41-3-1 and set forth in Plaintiff's Second Amended Complaint is inapplicable to this suit. *See* 2d Am. Compl. ¶ 71; *see also* 2019 Ga. L. § 3-1 (making the Anti-Human Trafficking Protective Response Act effective for offenses occurring on or after July 1, 2019).

Considering the language and legal backdrop of O.C.G.A. § 41-3-1 and Chapter 3 of Title 41 more broadly, those legislative enactments may be viewed as a prism through which certain deemed nuisances travel and are given abatement remedies. Not every deemed nuisance that travels through the prism of Chapter 3 of Title 41 necessarily has the remedy of damages. This is true whether the statutory nuisance claim is stated as a claim under O.C.G.A. § 41-3-1 or under a theory of public nuisance per se.

The Court cannot engraft on O.C.G.A. § 41-3-1 a private cause of action for damages for a public nuisance or use a statutory scheme plainly intended for the purpose of expanding equitable abatement remedies as a ground for liability for damages. At the common law, a private action for public nuisance had two remedies: damages and abatement. The plain language and effect of O.C.G.A. § 41-3-1 and its sister statutes is to clarify the way a nuisance encompassed by Chapter 3 of Title 41 may be abated, not to provide a new method for determining liability for damages or to expand private damages remedies. *Cf. Star Residential*, 311 Ga. at 786, 789 n.4.

## F.    Plaintiff's O.C.G.A. § 13-6-11 Claim Survives

Regarding the bad faith prong of O.C.G.A. § 13-6-11, the evidence authorizes an inference that Defendant's conduct constituted more than bad judgment or negligence. *See Vickers v. Motte*, 109 Ga. App. 615, 619 (1964) (defining bad faith); *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 336 (1950) (defining bad faith in actions sounding in tort) (citing *Grant* v. *Hart*, 197 Ga. 662, 672 (1944)). Particularly, the Court looks to evidence of Defendant's behavior the face of Plaintiff's pleas for help coupled with an authorized inference of Defendant's knowledge and acquiescence that its Motel was used for sex trafficking.  A jury may certainly infer "a dishonest purpose or some moral obliquity, [or] conscious doing of wrong" on the part of Defendant and then conclude that Defendant breached a "known duty through some motive of interest or ill will." *Rapid Grp., Inc. v. Yellow Cab of Columbus, Inc.*, 253 Ga. App. 43, 49 (2001) (quoting *Vickers*, 109 Ga. App.

at 619–20); *see also Windermere, Ltd. v. Bettes*, 211 Ga. App. 177, 179 (1993) ("Indicative of whether a party acts in good or bad faith in a given transaction is his abiding by or failing to comply with a public law made for the benefit of the opposite party, or enacted for the protection of the latter's legal rights.") (quoting *Hinton v. Ga. Power Co.*, 126 Ga. App. 416, 420 (1972)).

Furthermore, the stubborn litigiousness and unnecessary trouble and expense prongs of Plaintiff's O.C.G.A. § 13-6-11 claim also may be considered by a jury. A defendant may not cloak broad, unjustified resistance to liability under the banner of a "bona fide controversy" by raising arguably trifling and hair-splitting disputes regarding some of the elements of a plaintiff's claims and legal theories. *See Daniel v. Smith*, 266 Ga. App. 637, 638-39 (2004); *Delta Air Lines, Inc. v. Isaacs*, 141 Ga. App. 209, 211-12 (1977). On the record before this Court, and notwithstanding Defendant's summary judgment arguments aimed at avoiding any liability, a jury could conclude that no bona fide controversy or dispute existed regarding the basic issue of Defendant's liability. A jury may find the evidence in this case compelling, and to some extent both the negligence and nuisance claims of Plaintiff were destined to survive summary judgment in light of that evidence.

### III.    Conclusion

The evidence of record authorizes a conclusion that, in November 2016, the sex trafficking, pimping, and prostitution that the then-adolescent Plaintiff was subjected to was common at the Motel. Defendant disclaims knowledge or awareness of such repeated conduct at the Motel before the incident. Other evidence, however, supports the inference that Defendant permitted the Motel to become a sanctuary of sex trafficking, pimping, prostitution, and the sexual exploitation of vulnerable individuals. The depositions, police reports, affidavits, and other competent evidence of the circumstances in the record bear witness to a manner of keeping of the Motel that was not merely ignorant and benign but instead was disorderly and disruptive to the local area.

A reading of the record in Defendant's favor also is authorized, but such is not the standard where Defendant is the movant seeking summary judgment. A jury would certainly be authorized to find an invasion of the public right to be free of the criminally proscribed maintenance and keeping of disorderly houses, bawdy houses, and lewd houses. A jury would be further authorized find that such a nuisance was the proximate cause of personal injuries special to Plaintiff.

The Court likewise finds that a jury could conclude that Defendant has acted in bad faith, been stubbornly litigious, and/or caused Plaintiff unnecessary trouble and expense. Thus, Plaintiff's claim for attorney's fees and litigation expenses under O.C.G.A. § 13-6-11 is viable.

For these reasons, Defendant's Motion is hereby DENIED in part with respect to Plaintiff's common law public nuisance claim and her O.C.G.A. § 13-6-11 claim for attorney's fees and expenses of litigation. Defendant's Motion is GRANTED in part with respect to Plaintiff's private nuisance claim and her statutory claim for damages grounded in O.C.G.A. § 41-3-1.

SO ORDERED, this 8th day of May, 2024.

_____
MIKE JACOBS, Judge
State Court of DeKalb County

STATE COURT OF
DEKALB COUNTY, GA.
5/8/2024 9:40 AM
E-FILED
BY: Monique Roberts