IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAL ROSEBERRY, et al.,                   :
                                            :
        Plaintiffs,                         :
                                            :
v.                                          :         CIVIL ACTION NO.
                                            :         1:25-cv-01062-LMM
                                            :
STUDIO 6 DELK ROAD, LLC, et al.,            :
                                            :
        Defendants.                         :

## ORDER

This case comes before the Court on Defendants' Motion to Dismiss under Rule 12(b)(6). Dkt. No. [19]. After due consideration, the Court enters the following Order.

## I.   BACKGROUND

This case is about allegations of sex trafficking at a Motel 6 in Marietta, Georgia ("the Motel"). Plaintiffs Michal Roseberry, J.T., and W.K., claim to be victims of sex trafficking at the Motel. Dkt. No. [15] ¶ 1. Plaintiff Roseberry was trafficked at the Motel from roughly the end of 2015 through March 2016. Id. ¶ 20. J.T. was trafficked at the Motel in 2012, when she was 17 years old, and again from 2015–2016. Id. ¶ 33. And W.K. was trafficked at the Motel from roughly the summer of 2013 to the end of 2014, when she was 15 and 16 years old. Id. ¶ 48.

Defendants are Studio 6 Delk Road, LLC, Lexicon Hospitality, LLC, and Lexicon Hospitality Investments, LLC. Id. ¶¶ 2, 5, 8. Plaintiffs allege that "[f]or the purposes of owning, operating, and managing the Motel 6, during the relevant time, Defendants functioned as a single entity and exercised control jointly over the [M]otel and over each other.¹" Id. ¶ 15. Sex trafficking and prostitution were rampant at the Motel, but Defendants "ignore[d], allow[ed], condone[d], facilitate[d], support[ed], and/or permit[ted]" it. Id. ¶ 18.

Plaintiffs claim that Defendants' employees acted as lookouts for Plaintiffs' traffickers. Id. ¶¶ 25, 47, 51. They also destroyed evidence of Plaintiffs' trafficking by emptying trash cans which were filled with condoms and bottles of lubricant. Id. ¶¶ 30, 45, 59. In the case of Plaintiff J.T.'s trafficker, Defendants' employees allowed him to continue trafficking at the Motel in exchange for extra tips. Id. ¶

---

¹ Ordinarily, the acts of separately incorporated entities are to be treated as separate. "A cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees even in the situation in which a corporation is owned solely by one person." Ga. Dermatologic Surgery Ctrs., P.C. v. Pharis, 792 S.E.2d 747, 753 (Ga. Ct. App. 2016). And that holds true for LLCs. Emson Inv. Props., LLC v. JHJ Jodeco 65, LLC, 824 S.E.2d 113, 118 (Ga. Ct. App. 2019). Because "one of the purposes of incorporating a business is insulation from liability," courts "should be cautious about ignoring the corporate structure." Cobra 4 Enters. v. Powell-Newman, 785 S.E.2d 556, 560 (Ga. Ct. App. 2016). "A plaintiff may rely on three intertwined theories in an attempt to pierce the veil: (1) alter ego; (2) agency; and (3) joint venture." Id. Plaintiffs have alleged both an alter ego and joint venture theory. Dkt. No. [15] ¶¶ 12–15. Defendants do not raise their status as separate entities in their motion to dismiss. Accordingly, the Court will assume for the purpose of this Motion that the acts of each Defendant are attributed to all three.

40. And some of them exchanged rooms at the Motel for sex with other victims. Id. ¶ 41.

Plaintiffs now sue Defendants, claiming that they (1) benefitted from participating in a venture made illegal by the Trafficking Victims Protection Reauthorization Act ("TVPRA"), (2) maintained a nuisance which caused Plaintiffs' harm, and (3) knowingly benefited from or directly perpetrated minor Plaintiffs J.T. and W.K.'s trafficking. Dkt. No. [15]. Defendants now move to dismiss all of Plaintiffs' claims. Dkt. No. [19].

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

3

At the motion-to-dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

## III.  DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint, arguing that it fails to state a claim under the TVPRA, that Plaintiffs' nuisance claim fails for lack of control or is time-barred, and that Plaintiffs have likewise failed to state a claim under 18 U.S.C. § 2255. Dkt. No. [19]. Plaintiffs disagree. Dkt. No. [22]. The Court addresses the parties' arguments below.

### A.  TVPRA

Plaintiffs first contend that Defendants violated the TVPRA. Dkt. No. [15] at 42–45. The TVPRA provides a civil remedy to certain victims of sex trafficking. Those victims can assert a claim against either (1) a "perpetrator," or (2) "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [the TVPRA]." 18 U.S.C. § 1595(a). The latter is known as a "beneficiary" claim. To state a beneficiary claim,

a plaintiff must plausibly allege that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

Doe #1 v. Red Roof Inns, Inc., 21 F.4th 714, 726 (11th Cir. 2021). The Court analyzes whether Plaintiffs have done so below.

### 1. *Knowingly Benefitted*

The first element of a TVPRA beneficiary claim is that the defendant "knowingly benefitted" from participating in a common undertaking. Id. at 724. To plead that they did, a plaintiff must plausibly allege that the defendant "knew it was receiving some value from participating in the alleged venture." Id. Defendants, relying on out-of-circuit authority, argue that Plaintiffs' Complaint fails to state a claim because it does not assert that Defendants received a benefit "with knowledge of, and on account of, the trafficker's alleged exploitation of Plaintiffs." Dkt. No. [19] at 9. Plaintiffs respond that "[e]very court in the country to analyze this element" have concluded that similar allegations as those in the complaint are sufficient to state a claim. Dkt. No. [22] at 9.

Plaintiffs allege that Defendants knowingly benefited by "receiving revenue generated by the operation of the Motel 6, including the revenue generated for the rooms in which Plaintiffs were trafficked." Dkt. No. [15] ¶ 98. Specifically, Defendants "rented the rooms at the Motel 6 to Plaintiffs' traffickers *so that* Plaintiffs could be violently sold for sex at the [M]otel" and "collected fees for

rental of those rooms." Id. ¶ 18(a) (emphasis added). District courts in this Circuit have repeatedly held that the receipt of rental revenue from a room one knowingly rents to a trafficker constitutes "knowingly benefit[ting]" from a venture with the trafficker. See J.G. v. Northbrook Indus., Inc., 619 F. Supp. 3d 1228, 1234 (N.D. Ga. 2022) (collecting cases). The Court agrees that these allegations are sufficient to plead the first element.

### 2.    *Participation in a Venture*

Plaintiffs must next allege that Defendants derived those benefits—here, the rental revenue—from "participating in a venture." Red Roof, 21 F.4th at 724; see also 18 U.S.C. § 1595(a) (requiring "participation in a venture"). Defendants contend that Plaintiffs have not alleged that "Defendants made any voluntary, overt acts in furtherance of any trafficker's alleged exploitation of Plaintiffs." Dkt. No. [19] at 12. They contend that Plaintiffs must plead that Defendants "knowingly, voluntarily, and actually participated in a trafficking venture." Id. at 10. Plaintiffs respond that Defendants invoke the incorrect legal standard, Dkt. No. [22] at 8–9, and that, even if the higher standard applies, they have met it by alleging that Defendants knowingly facilitated or assisted in their trafficking, id. at 11–13. Because the parties disagree, the Court must first address the standard for pleading participation in a venture.

### a.    *Applicable Standard*

The second element of a TVPRA beneficiary claim is that the defendant "participat[ed] in a venture." Red Roof, 21 F.4th at 724; see also 18 U.S.C. §

1595(a). Defendants contend that this requires Plaintiffs to plead that they "knowingly, voluntarily, and actually participated in a trafficking venture." Dkt. No. [19] at 10. Plaintiffs contend that it merely requires them to plead that Defendants took part in "a common undertaking or enterprise involving risk and potential profit." Dkt. No. [22] at 11. The Court agrees with Plaintiffs.

Defendants' arguments are based on the elevated standard for criminal liability found in 18 U.S.C. § 1591. See, e.g., Dkt. No. [19] at 8–9. But both the Eleventh Circuit and this Court have refused to apply the heightened standard for "participation" used in criminal actions to civil beneficiary claims. See Red Roof, 21 F.4th at 724–26 (explaining that "the civil provisions of Section 1595(a) make no sense with Section 1591's definition of 'participation in a venture' read in"); A. J. v. P. Cap. Funding, LLC, No. 1:22-CV-02752-LMM, 2023 WL 6193013, at *2 (N.D. Ga. Apr. 14, 2023) ("[I]n Red Roof, the Eleventh Circuit expressly rejected that interpretation and instead found that § 1591—the portion of the TVPRA providing for criminal liability—'clearly states that its definition of "participation in a venture" . . . applies only to the phase as used in [§] 1591 of the statute'"). Thus, the Court will apply the civil standard for "participation in a venture" articulated in Red Roof.

b.    Application

As Red Roof explained, "to participate in a venture under Section 1595(a), a defendant must take part in a common undertaking involving risk or profit." 21 F.4th at 727. Defendants contend that Plaintiffs have not alleged an overt act in

furtherance of Plaintiffs' trafficking. Dkt. No. [19] at 13–14. In Defendants' view, Plaintiffs attempt to transform routine housekeeping activities into the overt acts required to show their participation. Id. On the other hand, Plaintiff contends that Defendants (through their employees) actively assisted Plaintiffs traffickers. Dkt. No. [22] at 11–13. The Court agrees with Plaintiffs.

The Court first identifies the common undertaking Defendants are alleged to have engaged in with Plaintiffs' traffickers.[2] Plaintiffs allege that "Defendants participated in a motel venture . . . [that] violated the TVPRA by harboring and maintaining Plaintiffs so that they could be sold for sex at the Motel." Dkt. No. [15] ¶ 99. That venture allegedly violated the TVPRA because it purportedly violates § 1591(a). Dkt. No. [22] at 11 n.9. In short, Plaintiffs have alleged that (1) Defendants engaged in a motel venture that (2) violated the TVPRA. To support those allegations, Plaintiffs did more than merely assert that Defendants received rental revenue from the traffickers. Plaintiffs also alleged that Defendants' employees (1) acted as lookouts for the traffickers in exchange for tips, (2) frequently disposed of and destroyed evidence of sex trafficking, (3) exchanged rooms at the Motel for sex with other sex trafficking victims there, and

---

[2] Courts distinguish between a "sex trafficking venture" and "commercial ventures to operate hotels" which violate the TVPRA. Red Roof, 21 F.4th at 726–27. Either is actionable, but different factual allegations are needed to establish each. See id. at 727.

(4) allowed traffickers to rent rooms on credit so they could use them to traffic Plaintiffs and then pay for the rooms afterward. Dkt. No. [15] ¶¶ 25, 41, 47, 51, 52.

Defendants contend that emptying trash bins is a routine motel service. Dkt. No. [19] at 13–14. But Plaintiffs' Complaint does not allege that Defendants' employees merely emptied the bins as usual. Instead, Plaintiffs contend that they "knowingly and actively disposed of and destroyed physical evidence" of Plaintiffs trafficking. Dkt. No. [15] ¶ 32; see also ¶¶ 25, 31–32, 46–47, 50, 57. In addition, Defendants do not address the allegations that their employees acted as lookouts for the traffickers in exchange for tips, exchanged rooms at the Motel for sex with other sex trafficking victims there, or that they allowed traffickers to rent rooms on credit so they could use them to traffic Plaintiffs and then pay for the rooms afterward.

The Court is bound to accept those allegations as true and view them in the light most favorable to Plaintiffs. FindWhat, 658 F.3d at 1296. In that light, Plaintiffs' Complaint pleads that Defendants participated in a motel venture that harbored and maintained Plaintiffs so they could be sold for sex.

### 3. *Enterprise Violated the TVPRA*

Next, Plaintiffs must plead that Defendants' common undertaking violated the TVPRA as to them. Minor Plaintiffs J.T. and W.K. contend that they "were the victims of violations of 18 U.S.C. § 1591."[3] Dkt. No. [15] ¶ 125. Section 1591

---

[3] Plaintiff Roseberry does not explicitly reference § 1591. However, she makes nearly identical allegations to J.T. and W.K. with respect to Defendants' violation

prohibits any person from participating in or "knowingly . . . benefit[ting], financially or by receiving anything of value, from participation in a venture" which

> recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or in reckless disregard of the fact that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act.

18 U.S.C. § 1591(a). Before addressing whether Plaintiffs pled facts from which the Court can infer a violation § 1591, the Court must address its *mens rea* requirement.

The parties disagree on the mental state required to violate § 1591. Plaintiffs contend that they must merely allege that "they were minors when [they were] forced to engage in commercial sex acts and that the Defendant had a reasonable opportunity to observe [them] on the premises." Dkt. No. [22] at 13 (citing D.H. v. Tucker Inn Inc., 689 F. Supp. 3d 1304, 1310 (N.D. Ga. 2023)). Defendants contend that Plaintiffs must allege that they "knew or recklessly disregarded that the plaintiff was being forced or coerced to commit commercial sex acts." Dkt. No. [19] at 15. On this point, Defendants are correct.

_____

of § 1595. Accordingly, the Court will consider § 1591 the predicate offense to her § 1595 claim, as it does for the minor Plaintiffs' claim.

This issue is one of statutory interpretation. Therefore, the Court begins—as it must—"with the language of the statute itself." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989). And the Court interprets that language "according to its plain meaning as understood within its statutory context." Turner v. U.S. Atty. Gen., 130 F.4th 1254, 1258 (11th Cir. 2025). "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" Ron Pair Enters., 489 U.S. at 241 (citing Caminetti v. United States, 242 U.S. 470, 485 (1917)). Here, Plaintiffs' argument is foreclosed by the statute's text.

As quoted above, § 1591 is violated only if its *actus reus* is committed "knowing, or in reckless disregard of" certain facts. 18 U.S.C. § 1591(a). It is true that 18 U.S.C. § 1591(c) removes that burden if "the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited." But it does so only "[i]n a prosecution under subsection (a)(1)" and only as to "the Government." Id. This action is not a criminal prosecution and the U.S. is not a party. Accordingly, Plaintiffs J.T. and W.K. cannot take advantage of the "*alternative* to proving any *mens rea* with regard to the [defendants'] awareness of the victim's age" that is afforded to the Government in criminal prosecutions. United States v. Whyte, 928 F.3d 1317, 1328 (11th Cir. 2019). Instead, they must allege that Defendants knew or recklessly disregarded the fact that (1) they were under eighteen years of

age and would be caused to engage in a commercial sex act, or (2) force, threats of force, fraud, coercion, or some combination thereof would be used to cause them to engage in a commercial sex act.

To that end, Plaintiff J.T. alleges that Defendants' employees allowed trafficking in the Motel's rooms to continue in exchange for extra tips, and that her trafficker regularly paid the housekeepers for their assistance and for not reporting it to authorities. Dkt. No. [15] ¶ 40. Plaintiff W.K. alleges that Defendants' employees destroyed evidence of her trafficking to hinder any potential investigation into it, that the housekeepers acted as lookouts for her trafficker, and that Defendants allowed her trafficker to stay in a room without paying for it so that W.K.'s trafficker could sell her for sex and use the proceeds to pay for the room afterward. Id. at ¶¶ 50–52. In these allegations, the minor Plaintiffs have pled facts from which the Court can infer that Defendants knew or, at a minimum, recklessly disregarded that they would be caused to engage in commercial sex acts.

It is not entirely clear that the same holds true with respect to their age. But it is sufficient—irrespective of age—that the defendant knows or recklessly disregards the fact "that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause [a] person to engage in a

commercial sex act." 18 U.S.C. § 1591(a).[4] Plaintiffs each allege that their traffickers used those means against them at the Motel. Plaintiff Roseberry contends that after her trafficker "struck Michal in the face with enough force to draw blood" in "plain view of the front desk employee," the employee "helped to conceal the trafficking venture by letting Michal's trafficker know in which areas of the hotel it was safe to beat his victims." Dkt. No. [15] ¶ 27. She further alleges that when she tried to escape, her trafficker chased her down in the Motel's parking lot, dragged her back to the room, and beat her again. Id. ¶ 28. Plaintiff J.T. alleges that she "was frequently beaten by her trafficker in and around the Motel," including once being beaten for looking another man in the eyes. Id. ¶ 36. Plaintiff W.K. does not allege that she was beaten but contends that she was subject to "monitoring and control" by her trafficker. Id. ¶¶ 55.

For Plaintiffs Roseberry and J.T., it is alleged that force, and threats of force—either direct or indirect—caused them to continue to engage in commercial sex acts. In Roseberry's case, the complaint alleges that she was prevented from escaping her trafficker only when he chased her down and beat her. And in J.T.'s case, she alleges that she was subject to her trafficker's rules or directives—as the fact that she was beaten for looking another man in the eyes makes evident. Although Plaintiff W.K. does not allege that force or the threat of force was used

---

[4] This holds true irrespective of whether Plaintiffs' theory is that Defendants harbored and maintained them in violation of § 1591(a)(1), or that they knowingly benefitted under § 1591(a)(2).

against her, her allegations nevertheless share a common thread with the other Plaintiffs in that they plead coercion.[5]

All of this allegedly occurred with Defendants' constructive knowledge and occurred in or around the Motel. "J.T. was frequently beaten by her trafficker in and around the Motel." Id. ¶ 36. And Defendants' employees personally observed Plaintiff Roseberry's trafficker strike her. Id. ¶ 27. Viewing these allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have plausibly alleged that Defendants knew or should have known that Plaintiffs would be caused to engage in commercial sex acts by a combination of force and coercion.[6] Accordingly, Plaintiffs have plausibly alleged that Defendants' enterprise violated the TVPRA as to them.

---

[5] Coercion means "threats of serious harm to or physical restraint against any person," "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person, or "the abuse or threatened abuse of law or the legal process." 18 U.S.C. § 1591(e)(2). Plaintiffs have each alleged plans or patterns which led them to believe they would be harmed or restrained.

[6] Even if the Court found that Plaintiff W.K. had not pleaded that Defendants knew that force, threats of force, fraud, or coercion caused her to engage in commercial sex acts, she has still stated a claim under § 1595(a) based on a predicate violation of § 1591(a) because she pled facts from which the Court can infer that Defendants knew she "ha[d] not attained the age of 18 years and [would] be caused to engage in a commercial sex act." 18 U.S.C. § 1591(a). See Dkt. No. [15] ¶¶ 49, 55 (detailing Defendants' personal observation of W.K.—who was 15 or 16 at the time—and the evidence of her trafficking).

### *4.    Knowledge that Enterprise Violated the TVPRA*

The final element of a beneficiary claim is that Defendants had constructive or actual knowledge that their enterprise violated the TVPRA as to Plaintiffs. Plaintiffs must plead facts from which the Court can infer that they did.

Plaintiffs allege that Defendants' "agents, employees, and representatives, participated in Plaintiffs' sex trafficking at the Motel 6." Dkt. No. [15] at 101. Specifically, they (1) acted as lookouts, (2) found trash cans that were full of more than 40 condoms each day, boxes of condoms and bottles of lubricant, multiple girls in underwear or skimpy clothes, and drug needles and other paraphernalia, (3) disposed of and destroyed much of that evidence "so that any investigation into the trafficker would be stymied," (4) rented rooms on credit to traffickers who would pay only after using the rooms to sell Plaintiffs for sex, (5) allowed the trafficking in rooms to continue in exchange for extra tips, and (6) were "regularly paid" to "not report[ ] it to authorities." Id. ¶¶ 25, 30, 31, 40, 49–52.

Based on those allegations, Plaintiffs have plausibly alleged that Defendants, at a minimum, had constructive knowledge that their motel venture violated the TVPRA as to Plaintiffs.[7] If Defendants did not believe that what they allowed to occur at the Motel was unlawful, there would be no need for

---

[7] Plaintiffs have likewise alleged that Defendants had actual knowledge. In particular, the fact that Defendants' employees acted as lookouts, were paid to not report what they witnessed to authorities, explicitly allowed the trafficking for extra tips, and destroyed evidence so as to thwart an investigation, strongly suggests that Defendants (through their employees) had direct knowledge that how the Motel was operated with respect to these Plaintiffs was unlawful.

"lookouts," or for them to destroy evidence in the hopes of thwarting any potential investigation, or accept payment to *not* report what they witnessed to authorities. For that reason, courts in this Circuit routinely find that such allegations suffice. See C.B. v. Naseeb Invs., Inc., 748 F. Supp. 3d 1338, 1360 (N.D. Ga. 2024) (no constructive knowledge because "[i]n contrast to some other cases, Defendant's employees did not act as lookouts for [the trafficker], nor were they otherwise directly involved in his operation. There is also no evidence that [the trafficker] had previously rented rooms at the Hilltop Inn for sex trafficking purposes."); S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251 (M.D. Fla. 2020) (listing circumstances giving rise to constructive knowledge and collecting cases).

In sum, Plaintiffs have stated a TVPRA beneficiary claim. Defendants' motion is **DENIED** with respect to Plaintiffs' TVPRA claim.

## B.    Nuisance

Plaintiffs next assert a claim for nuisance. Dkt. No. [15] at 45–49. They contend that the Motel is both a public nuisance, and a nuisance per se. Id.

Defendants contend that Plaintiffs' nuisance claim fails for three reasons. First, Defendants assert that Plaintiffs did not allege that Defendants had control over the harm they suffered. Dkt. No. [19] at 19–20. Second, Defendants argue that Georgia's two-year personal injury statute of limitations applies, and that none of the alleged acts occurred within two years prior of when Plaintiffs filed this suit. Id. at 20–22. And third, Defendants assert that, to the extent Georgia law provides an extended period for minor victims of sexual abuse to file suit,

Plaintiffs claims are still time-barred because the extended period lasts only until a plaintiff's twenty-third birthday, and Plaintiffs all sued after reaching the age of twenty-three. Id. at 22–23. Plaintiffs respond that there is no applicable statute of limitations for a public nuisance. Dkt. No. [22] at 24–25. The Court agrees with Plaintiffs.

### 1.  *Control*

Defendants assert that Plaintiffs did not allege that Defendants had control over the harm they suffered. Dkt. No. [19] at 19. Plaintiffs assert that "Defendants controlled the nuisance because they controlled the [M]otel." Dkt. No. [15] ¶ 115. They further contend that Defendants facilitated, concealed, and participated in "rampant prostitution" at the Motel. Id. ¶¶ 18, 115. At bottom, Plaintiffs' position is that "Defendants owned, operated, and maintained the Motel 6 and that prostitution and sex trafficking happened there with Defendants' actual and constructive knowledge." Dkt. No. [22] at 22. For the reasons below, the Court agrees with Plaintiffs.

The "essential element" of a nuisance claim is "control over the cause of the harm." Fielder v. Rice Const. Co., Inc., 522 S.E.2d 13, 16 (Ga. Ct. App. 1999). "The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance." Sumitomo Corp. of Am. v. Deal, 569 S.E.2d 608, 613 (Ga. Ct. App. 2002); see also Bailey v. Annistown Rd. Baptist Church, Inc., 689 S.E.2d 62, 72 (Ga. Ct. App. 2009) ("[L]iability for a nuisance arises out of responsibility for the continuance or maintenance of a nuisance in

addition to the creation of one."). To plead control, Plaintiffs must allege "that the injury complained of was caused by some act or omission of the defendant[s], or that the conduct of the defendant[s] was the preponderating cause thereof." Brimberry v. Savannah, F. & W. Ry. Co., 3 S.E. 274, 276 (Ga. 1887). Plaintiffs have done so here. Specifically, Plaintiffs have pleaded that Defendants were a cause of the continuation and maintenance of their harm.

Plaintiffs have alleged that Defendants proximately caused their harms by facilitating, concealing, and participating in their trafficking. Dkt. No. [15] ¶¶ 99, 106. In doing so, Defendants "harbor[ed] and maintain[ed] Plaintiffs *so that* they could be sold for sex at the Motel." Id. ¶ 99 (emphasis added). They did so by routinely destroying evidence in order to thwart any sex trafficking investigation, acting as lookouts for the traffickers, allowing the trafficking in exchange for tips, and exchanging rooms at the Motel for sex with trafficking victims. Id. ¶¶ 25, 40, 41, 46, 47, 50, 51, 57, 63, 128. These allegations reveal that Defendants took affirmative steps to allow Plaintiffs' trafficking to continue.

Setting aside those affirmative acts, Plaintiffs also alleged that the trafficking and its associated harms occurred at the Motel "with Defendants' actual and constructive knowledge." Dkt. No. [22] at 22. Defendants allegedly took no steps to remedy or prevent the "rampant sex trafficking and prostitution at the [M]otel." Dkt. No. [15] ¶ 16. And they did so despite knowing of "rampant sex trafficking and prostitution at the [M]otel for years, before, during, and after

Plaintiffs' trafficking," "the frequent and ongoing similar crime occurring at the [M]otel," "the reports of [M]otel guests to Defendants regarding sex trafficking and prostitution-related activities," and "sex trafficking generally, in the Atlanta area." Id. This, too, allows the Court to infer control by the Defendants because all that is required is that "the injury complained of was caused by some act *or omission* of the defendant." Brimberry, 3 S.E. at 276 (emphasis added). As pleaded, Plaintiffs' harm was "the natural and proximate result" of Defendants' failure to take *any* remedial steps. Brimberry, 3 S.E. at 276. Plaintiffs have alleged that Defendants had control over the continuance and maintenance of their trafficking.

### 2. *Timeliness*

Defendants also argue that Plaintiffs' nuisance claims are time-barred. Dkt. No. [19] at 20–23. Their argument depends on whether the Motel is a public or private nuisance. In Georgia, nuisance claims are governed by an extensive statutory framework. "A nuisance is anything that causes hurt, inconvenience, or damage to another," if that inconvenience is not "fanciful, or such as would affect only one of fastidious taste," but is "such as would affect an ordinary, reasonable man." O.C.G.A. § 41-1-1. "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals." O.C.G.A. § 41-1-2. "A public nuisance generally gives no right of action to any individual. However,

if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action." O.C.G.A. § 41-1-3.

Plaintiffs contend that the Motel was a public nuisance because (1) its "history of rampant crime and illegal sex activity created a spillover effect that led to other crime occurring in the surrounding area," (2) it "caused or contributed to a blighting effect on the surrounding community, so that [it] negatively damaged all persons who came within the sphere of operation of the crime, sex trafficking, and prostitution" there, and (3) it "had an appreciable blighting effect on the surrounding community."[8]  Dkt. No. [15] ¶¶ 112–114.

Georgia courts have repeatedly stated that a public nuisance claim is not subject to a statute of limitations. See, e.g., Davis v. City of Forsyth, 621 S.E.2d 495, 499 (Ga. Ct. App. 2005) ("The statute of limitations does not run in favor of public nuisances because of the impropriety of imputing laches to the public.") (cleaned up); Doe v. St. Joseph's Cath. Church, 850 S.E.2d 267, 273 (Ga. Ct. App. 2020), aff'd in part, rev'd in part, 870 S.E.2d 365 (Ga. 2022), and vacated, 878 S.E.2d 575 (Ga. Ct. App. 2022) (a public nuisance claim "is not governed by a traditional statute of limitation"); McArthur v. Beech Haven Baptist Church of

---

[8] Defendants' response does not contest Plaintiff's assertion that the Motel is a public nuisance. Accordingly, the Court will assume—solely for the purposes of Defendants' motion to dismiss—that the Motel was a public nuisance. The Court takes no position on whether the Motel was, in fact, a public or private nuisance.

Athens, 864 S.E.2d 189, 193 (Ga. Ct. App. 2021), cert. granted, opinion vacated (Aug. 23, 2022) ("A public nuisance claim is not governed by a traditional statute of limitation."). This Court agrees.

Under Georgia law, a public nuisance claim is not subject to Georgia's two-year personal injury statute of limitations as Defendants contend. Plaintiffs' nuisance claim is not time-barred. Defendants' motion is **DENIED** with respect to Plaintiffs' nuisance claim.

### C.    18 U.S.C. § 2255

In their final claim, Plaintiffs assert that Defendants are liable to them under 18 U.S.C. § 2255, which allows any person who, while a minor, was a victim of certain sections of the TVPRA to "recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred." 18 U.S.C. § 2255(a). Defendants contend that Plaintiffs' claim fails because "Plaintiffs have not alleged any knowing, voluntary, and overt act by Defendants that furthers any sex trafficking venture, nor any plausible facts showing that any Defendant received a benefit because of their alleged facilitation of sex trafficking." Dkt. No. [19] at 23. Plaintiffs respond only by noting that Defendants' arguments with respect to 18 U.S.C. § 2255 are derivative of their TVPRA arguments, and that their Complaint states a perpetrator claim against each Defendant. Dkt. No. [22] at 25. The Court agrees with Plaintiffs.

18 U.S.C. § 2255 provides a civil remedy to then-minor victims of certain TVPRA violations, including § 1591. Plaintiffs allege that Defendants violated § 1591 by "knowingly assisting and facilitating [J.T.'s and W.K.'s] sex trafficking at the Motel." Dkt. No. [15] ¶ 123. More specifically, Defendants' employees routinely destroyed or disposed of evidence to thwart any sex trafficking investigation, acted as lookouts for the traffickers, allowed the trafficking to continue in exchange for tips, and gave rooms to the traffickers in exchange for sex with their victims. Id. ¶¶ 25, 40, 41, 46, 47, 50, 51, 57, 63, 128. All the while, Plaintiff alleges that Defendants continued to receive rental income from rooms which it knew were used for sex trafficking. Id. ¶ 129. For example, the complaint alleges that "J.T. was frequently beaten by her trafficker in and around the Motel," and W.K. displayed "visible signs of a child sex trafficking victim," including "her young age and inappropriate appearance, fatigue, sleep deprivation, injuries, a failure to make eye contact with others, loitering, soliciting male patrons, and monitoring and control of W.K. by her trafficker." Id. ¶¶ 36, 55.

Based on those allegations, the Court can reasonably infer that Defendants knew "force, threats of force, fraud, [or] coercion" would be used to cause J.T. to engage in a commercial sex act, and that W.K. had not attained the age of 18 years and was caused to engage in a commercial sex act. In either event, the Court can infer that Defendants either (1) harbored and maintained Plaintiffs in

violation of § 1591(a)(1), or (2) benefitted financially from participating in a motel

venture that did the same in violation of § 1591(a)(2). Plaintiffs J.T. and W.K.

have stated a claim against Defendants under 18 U.S.C. § 2255(a). Accordingly,

Defendants' motion is **DENIED** with respect to Plaintiffs' 2255(a) claim.

## IV.    CONCLUSION

In accordance with the foregoing, Defendants' motion to dismiss, Dkt. No.

[19], is **DENIED**.


**IT IS SO ORDERED** this 18th day of November, 2025.

**Leigh Martin May**
**Chief United States District Judge**