UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAL ROSEBERRY, W.K., and J.T.,<br><br>Plaintiffs,<br><br>v.<br><br>STUDIO 6 DELK ROAD, LLC; LEXICON HOSPITALITY, LLC; and LEXICON HOSPITALITY INVESTMENTS, LLC,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:25-cv-1062-LMM |

**PLAINTIFFS' NOTICE OF DEPOSITION TO DEFENDANTS STUDIO 6 DELK, LLC; LEXICON HOSPITALITY, LLC; AND LEXICON HOSPITALITY INVESTMENTS, LLC**

Plaintiffs require Defendants Studio 6 Delk, LLC; Lexicon Hospitality, LLC; and Lexicon Hospitality Investments, LLC to designate one or more representatives to testify about the topics outlined in Schedule A under Federal Rule of Civil Procedure 30(b)(6).

The deposition will begin at 10:00 a.m. on September 17, 2026, at the law offices of Weinberg Wheeler Hudgins Gunn & Dial, 3344 Peachtree Road NE, Suite 2400, Atlanta, GA 30326. The deposition will be taken by oral examination for all purposes permitted under the Federal Rules of Civil Procedure or other applicable law before an officer duly authorized to administer oaths. The deposition will be

recorded by stenograph and audiovisual means. The deposition will continue from day to day until completed.

Rule 30(b)(6) requires Defendants to designate one or more officers, directors, or managing agents, or other persons who consent to testify on behalf of each. Defendants must also fully prepare the selected representatives to testify about all information known or reasonably available to Defendants. Should Defendants fail to do so, Plaintiffs have the right to seek relief, including sanctions, from the Court.

Additionally, all Defendants' representatives are directed to bring to the deposition those items identified in Schedule B. All documents responsive to the first request in Schedule B must be produced at the deposition—regardless of whether those documents have already been produced in discovery. All documents responsive to the second and third requests in Schedule B must be produced by **5:00 p.m. on September 15, 2026**.

Respectfully submitted on August 28, 2026.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*
PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491

rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, GA 30097
(770) 822-0900 | Telephone
(770) 236-9784 | Facsimile

# SCHEDULE A

Defendants must designate and produce one or more knowledgeable representatives to testify on behalf of each about the following topics:

1. Plaintiffs' Complaint and Defendants' Answers to the Complaint, including the factual basis for each defense raised in the Answers.

2. Discovery in this case, including:

   a. Defendants' responses to discovery in this case;

   b. The creation, existence, retention, location, and production of materials produced or requested in discovery;

   c. The methods, procedures, and efforts Defendants took to search for documents, materials, or information responsive to Plaintiffs' discovery requests; and

   d. The methods, procedures, and efforts Defendants took to respond to and verify their responses to Plaintiffs' interrogatories.

3. Insurance coverage and policy limits that may apply to any or all of Plaintiffs' claims, including communications with any insurance company regarding potential coverage for Plaintiffs' claims.

4. Defendants' knowledge of all individuals who may have knowledge of, or serve as witnesses to, any facts or circumstances relevant to Plaintiffs' claims against them.

5. Defendants as companies, including:

   a. Whether they are for-profit companies;

   b. How long they have been operating;

   c. What business they are in;

d. How long they have been in that business;

e. What experience Defendants' owner(s) and manager(s) have in that business;

f. Any assets or properties Defendants own or have ever owned; and

g. The profits, expenses, budgets, and financial operation of Defendants.

6. The property itself, including:

a. When Defendants purchased the property;

b. Whether Defendants owned, occupied, managed, or controlled the property, and the periods of time for each;

c. Any other entity's or person's involvement in the property during the period in which Defendants owned the property;

d. Whether the property operated as a hotel/motel and whether it was always operated that way during Defendants' ownership; and

e. Whether the property is an income-generating asset for Defendants.

7. The areas surrounding the property, including:

a. Whether the area was known as a high-crime area at any time during Defendants' ownership;

b. Whether sex is often sold on Delk Road (i.e., the area surrounding the property); and

c. Whether drugs are often sold on Delk Road (i.e., the area surrounding the property).

8. How the property was run during Defendants' ownership, including:

a. The cost of rooms (and the different costs depending on the day, time of year, etc. if the costs vary);

b. Whether there were any room rental restrictions (such as age or type of payment) and what information was required to rent a room;

c. The check-in, check-out, and room-assignment policies and procedures;

d. Any training programs regarding Defendants' room rental, check-in, and check-out practices in effect at any time during Defendants' ownership of the property;

e. The room cleaning procedures;

f. The room rental length (hourly, nightly, weekly, etc.);

g. The hotel guest's responsibilities, if any;

h. Defendants' responsibilities, if any;

i. A description of the clientele;

j. The guest policy for the property;

k. The staffing during the daytime and nighttime as well as the hotel's operating hours;

l. The general job descriptions and duties for each staffing role (e.g., front desk, manager, housecleaning, maintenance, etc.);

m. The recordkeeping practices for the property; and

n. Any advertising and business development efforts for the hotel.

9. Defendants' employees, independent contractors, and vendors who worked at the property, as well as Defendants' policies for them, including:

   a. Defendants' hiring policies during the entire period they owned the property;

   b. Names, job title(s), job performance, job description(s), responsibilities related to the property, dates of employment or contractual relationship, and contact information for all individuals who worked at the property or were employed by Defendants during the entire period it owned the property;

   c. How Defendants came to hire each of the employees or independent contractors who worked at the property;

   d. Any policies or procedures related to vendors engaged by Defendants for or related to the property during the entire period it owned the property;

   e. Names, nature and scope of duties or services, terms of engagement, and dates of engagement for all vendors who provided services to Defendants during the entire period it owned the property; and

   f. How Defendants came to engage or contract with each vendor who provided services to Defendants during the entire period it owned the property.

10. Prior crime at the property;

   a. Any information Defendants knew about prior crime at its property and the surrounding area and when and how Defendants learned these things;

   b. The actions or efforts Defendants made to learn about prior crime at its property and the in surrounding area;

c. Any resources Defendants knew about which it could use to learn about prior crime at its property and the surrounding area and when and how Defendants learned of these resources;

d. All documents that were maintained regarding prior crime at the property and the surrounding area and when Defendants learned about these documents; and

e. Whether Defendants knew that dangerous, reckless, or lawless persons frequented the property and the surrounding area and when and how Defendants learned these things.

11. Defendants' safety and security policies, procedures, and training at/for the property, including:

a. Any policies, procedures, or training related to guest safety, crime prevention, or crime deterrence;

b. The policies and procedures regarding removing persons from the property for safety and security concerns;

c. Information, if any, provided to potential guests about the safety and security of the property and the surrounding area;

d. The policies and procedures related to reporting crime, including suspected crime, on the property both internally and to law enforcement or other relevant authorities; and

e. Any safety and security steps that were discussed for the property but not implemented, if any.

12. Defendants' policies, procedures, and training related to sex trafficking and prostitution for the property, including:

a. All compliance, safety, training, and operational policies and procedures related to prostitution or sex trafficking awareness, identification, and prevention for the property;

b. All employee training programs, education initiatives, or awareness campaigns related to prostitution or sex trafficking identification and prevention for the property;

c. All policies and procedures related to reporting suspected instances of prostitution or sex trafficking on the property, including internal reporting mechanisms and protocols for contacting law enforcement or other relevant authorities; and

d. All oversight mechanisms in place to ensure compliance with relevant laws, regulations, industry standards, and internal policies related to prostitution and sex trafficking.

13. Defendants' actions related to crime on the property:

a. All actions taken by Defendants to deter or prevent criminal activity, sexual assaults, rapes, commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other sex crimes occurring at the property;

b. Whether anyone developed a safety and security plan for the property, and if so, who;

c. What the safety and security plan for the property was;

d. Whose responsibility it was to implement Defendants' safety and security plan and what each person's role was;

e. Whether there were cameras, what the cameras showed, who looked at the cameras, and any policies or procedures regarding review of the camera feed(s);

f. Whether security patrols occurred on the property, whose responsibility it was to conduct the patrols, and the frequency in which the patrols were conducted;

g. Whether there was a "do not rent list," the criteria for getting on any such list, how the list was maintained and checked, and where the list is at present;

h. Whether incident reports, weekly security reports, or other similar reports were done and whether such reports were maintained;

i. The property's exterior security features (e.g., lighting, gates, fencing, panic poles, etc.);

j. Whether discussions were had with law enforcement regarding preventing or deterring crime on the property;

k. What law enforcement outreach was done, if any, and what the results were;

l. What cooperation, if any, occurred with law enforcement; and

m. All partnerships or collaborations with external organizations or agencies involved in addressing, preventing, or deterring prostitution, sex trafficking, and other crime.

14. Defendants' policies, procedures, and practices related to guest feedback and online reputation management, including:

a. All policies, procedures, and practices related to Defendants' review and response process for guest complaints and negative online reviews and Medallia surveys;

b. Whether Defendants received or reviewed Google reviews, Trip Advisor reviews, or other similar reviews, as well as Medallia survey responses, what it learned from any reviews or feedback it did receive, and how it responded;

c. Defendants' policies, procedures, and practices related to addressing guest concerns; and

d. All efforts Defendants made during its ownership of the property to address and mitigate negative guest feedback.

15. Plaintiffs' statuses on the property, including:

a. Whether Defendants rented rooms to Plaintiffs and received money for those rooms;

b. Whether Defendants rented rooms to Plaintiffs' traffickers and received money for those rooms;

c. Whether Defendants rented rooms to "johns" that ultimately paid Plaintiffs' traffickers for the right to have sex with Plaintiffs (this topic does not imply that Defendants knew how the room was going to be used);

d. Whether Plaintiffs were allowed to be on Defendants' property at any time; and

e. Whether Defendants sold Plaintiffs anything at any time, and if so, what, when, and where.

16. Defendants' knowledge regarding Plaintiffs' sex trafficking that occurred on the property, including:

a. Whether during their visits to the property, Defendants knew or recognized Plaintiffs, Plaintiffs' traffickers, or Plaintiffs' "johns;"

b. Defendants' interactions with Plaintiffs, Plaintiffs' traffickers, and the "johns;"

c. Defendants' observations of Plaintiffs, their traffickers, and the "johns;"

d. Defendants' communications regarding Plaintiffs, their traffickers, and the "johns;"

e. Defendants' interactions with responding officers to the property to the extent those interactions were related to Plaintiffs or their traffickers; and

f. All investigations Defendants performed related to Plaintiffs' sex trafficking.

17. Defendants' knowledge of criminal activity on the property during its ownership, including:

a. Knowledge of sexual assaults, rapes, commercial sex activity, prostitution, pimping, indecent exposure, sex trafficking, or other crimes occurring at the property, including all information known by Defendants regarding each instance; and

b. All instances during Defendants' ownership of the property where Defendants have made any report to any third party, including, but not limited to, law enforcement agencies, franchisors, insurance companies, or financial lenders, of any criminal activity occurring at the property.

18. Whether, based on the evidence presented, Defendants admit that more likely than not:

a. Plaintiffs were involved in commercial sex work as minors;

b. Plaintiffs are sex trafficking victims;

c. Plaintiffs suffered some degree of injury from being trafficked for sex;

d. Plaintiffs were trafficked for sex as Defendants' property;

e. Persons paid money to Plaintiffs' traffickers to have sex with Plaintiffs at Defendants' property;

f. Defendants ultimately benefited from the sex trafficking of Plaintiffs; and

g. It was reasonably foreseeable to Defendants that commercial sex would occur at its property.

19. Defendants' decision to file for bankruptcy, including who all on each Defendants' behalf made that decision.

## SCHEDULE B

All Defendants' representatives are directed to bring to the deposition the following documents. All documents responsive to the first request in Schedule B must be produced at the deposition—regardless of whether those documents have already been produced in discovery. All documents responsive to the second and third requests in Schedule B must be produced by **5:00 p.m. on September 15, 2026**. Plaintiffs' incorporate the instructions and definitions from their discovery requests, as relevant, to these requests.

REQUESTS FOR DOCUMENTS

1. All documents reviewed or created by Defendants' designated corporate representatives in preparing to testify under Federal Rule of Civil Procedure 30(b)(6), including emails and notes.
2. All documents responsive to Plaintiffs' discovery requests that have not been produced.
3. All documents related to Defendants' decision to file for bankruptcy.

**CERTIFICATE OF COMPLIANCE**

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Rory A. Weeks*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
RORY A. WEEKS
Georgia Bar No. 113491
rweeks@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com
*Attorneys for Plaintiffs*

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile